STATE OF MINNESOTA ex rel. HENRY W. CHILDS, Attorney General, and Others, v. JOHN COPELAND.[1]

November 25, 1896.

Nos. 10,282—(43).

**Special Law—City—Local Option—Constitution.**

*Held*, a local option law granting charter powers to all the cities of a certain class, to take effect in each city only upon the adoption of the same by such city, contravenes sections 33 and 34 of article 4 of the constitution, prohibiting special legislation as to cities, and requiring all laws as to the same to be uniform in their operation throughout the state.

**Same—Repeal by Special Law.**

*Held*, further, a special law relating to cities cannot be partially repealed by a special law, and the same result cannot be accomplished by a local option law which has merely the same effect.

**Laws 1895, c. 228—Constitution.**

*Held*, accordingly, that Laws 1895, c. 228, is unconstitutional.

[1] Reported in 69 N. W. 27.

**Local Option Law—Charter Powers—By-Laws and Ordinances.**

The distinction noted between such a local option law, granting such charter powers, and a local option law granting power to adopt a mere by-law or ordinance, the provisions of which are prescribed by the legislature.

Quo warranto on the relation of Henry W. Childs, attorney general, and Richard L. Gorman and others, as members of the board of public works of the city of St. Paul, requiring respondent to show by what warrant he assumed to act as commissioner of public works of said city. Writ of ouster issued.

*Eller, How & Butler* and *Henry W. Childs*, Attorney General, for relators.

*Walter L. Chapin* and *T. R. Palmer*, for respondent.

CANTY, J. Laws 1895, c. 228, is an act general in form, entitled "An act to provide for departments of public works and the making of public improvements in cities of over one hundred thousand inhabitants." It provides that such department shall consist of three branches: (1) an engineering department; (2) a commissioner of public works; and (3) a board of park commissioners. It provides that the head of the engineering department, or city engineer, shall be appointed by the mayor on the second Tuesday in June each even-numbered year, shall hold his office for two years, and shall appoint his assistants and the other employés under him. Section 2. It also provides that the commissioner of public works shall be appointed by the mayor on the same Tuesday, and shall hold his office for two years. Section 4. This commissioner is to have charge of all improvements which the city council may order. Under the provisions of the statute, he is a standing arbitrator or referee, to award all damages in condemnation proceedings instituted by him for the city, and to assess a special tax on property specially benefited to pay such damages.

The act provides for the condemnation of property for many different city uses, and provides the mode of procedure. It also provides for the collection of all taxes assessed for benefits which may become delinquent, by proceedings in the district court. Sections 7–133. It is also provided that the board of park commissioners shall consist of four members, to be appointed by the mayor, whose term of office shall be four years, one to be appointed each year. This

board is to have charge of the parks and parkways of the city, and the improvements thereon. Sections 116–145. Section 146 provides:

"This act shall be enforced in any city whenever the common council of any such city embraced within its provisions shall adopt the same by a majority vote of all the members; * * * and all acts and parts of acts in any charter or special law relating to said city shall be thereby, as to said city, repealed in so far as the same relate to the subject-matter of this act. * * * All general acts and parts of acts relating to the subject-matter of this act, so far as they apply to any city affected by this act, are hereby repealed."

The only two cities in this state having over 100,000 inhabitants have been operating under charters consisting of various special laws enacted before the amendments to the constitution prohibiting special legislation were adopted. The city of St. Paul has for many years had a board of public works, provided for by some of these special laws, which board consisted of five members, whose duties were somewhat similar to those imposed upon the commissioner of public works by said Laws 1895, c. 228. On July 27, 1895, the common council of St. Paul adopted this act, in the manner provided by section 146 thereof. The mayor appointed the respondent commissioner of public works under the act. But four of the members of the old board of public works (being all of the relators herein, except the attorney general) refused to surrender their offices. A writ of quo warranto was issued herein out of this court, to determine by what warrant the respondent claims the office of commissioner aforesaid.

It is claimed by relators that said chapter 228 is a special law, and contravenes sections 33 and 34 of article 4 of the constitution, as amended, and is unconstitutional, for the reason that it applies only to such cities as adopt it, and may be adopted by some cities of the class, and not by others, and therefore may not be of uniform operation throughout the state, as required by said amendment. In order that the decision in this case may be fully understood, it is necessary to examine somewhat carefully the question of the constitutionality of local option laws.

It is generally held that a law cannot be passed to take effect if the voters of the whole state so decide, and that such a law cannot be upheld on the theory that it is a law passed to take effect upon a condition. The passing of such a law is merely an attempt to delegate legislative power. Cooley, Const. Lim. 120–124. See, also, State

v. Young, 29 Minn. 474, 9 N. W. 737.    But, except where it is held to be prohibited by constitutional provisions prohibiting special legislation, it is generally held that, where municipalities have a special or peculiar interest in the law, it may be passed to take effect in such a municipality when accepted by some authoritative body representing the municipality.    Cooley, Const. Lim. 118–120.

Said constitutional amendment provides:

"Sec. 33.   *   *   *   The legislature shall pass no local or special law regulating the affairs of or incorporating, erecting or changing the lines of any county, city,   *   *   *:   provided, however, that the inhibitions of local or special laws in this section shall not be construed to prevent the passage of general laws on any of the subjects enumerated.    The legislature may repeal any existing special or local law, but shall not amend, extend or modify any of the same.

"Sec. 34. The legislature shall provide general laws for the transaction of any business that may be prohibited by section one of this amendment, and all such laws shall be uniform in their operation throughout the state."

Under these constitutional provisions, is a local option law which gives to each of a class of cities the right to accept or reject certain charter powers constitutional?    Is such a general local option law one having a uniform operation throughout the state?    How can a law which goes into effect in one city, and does not go into effect in another city of the same class, have a uniform operation throughout the state? It seems to us that the legislature cannot bring about diverse charter powers in different cities by enacting any such local option law which may result in giving different cities different charter powers, unless the same result can be accomplished by a direct, unconditional law. The mere possibility that all the cities of the class may adopt the law will not save it.    It must appear at the time the law is passed that it will have a uniform operation throughout the state; that is, that it will take effect in all cities of the class, and that the class is a proper one.    The uniform operation of the law cannot be left to any future contingency.

Let us now consider the nature of local option legislation with reference to this constitutional amendment.    There is a vast difference between delegating to some local body the power to adopt a charter and the power to adopt by-laws or ordinances.    Suppose, for instance, that a law, general in form, was passed as the charter of the cities of a certain class; that this law created some local body in

each city, and gave it generally a large number of designated powers (such as are usually given to such cities by their charters), and authorized this local body to exercise these powers as it saw fit, to designate such other officers as it saw fit, and to define their powers and manner of election or appointment, but provided nothing more in detail. Such a charter, even for the class of larger cities, might be written on four or five pages. But would such a nebulous, skeleton charter be constitutional? Would it not be likely to result in a greater diversity of local laws, be less uniform in its operation, and far less a limitation on the local authorities, than a law, or three or four laws, general in form, which provided three or four different kinds of charters, and left it to each local body to adopt which it saw fit? Yet it is universally conceded that the latter method of providing charters or charter powers is a most palpable evasion of the constitutional provisions prohibiting special legislation. Then, if the latter method of providing city charters is unconstitutional, surely the former method must be. Certainly, the legislature delegates less to the local body when all the provisions of the charter or local law are prescribed, and the local body has only the power to accept or reject it, than when the whole subject is delegated generally to the local body.

Then it is clear that, while the general power to adopt ordinances or by-laws may be delegated to such a local body, no general power to adopt a charter or charter provisions can be so delegated. It also follows that if the legislature can, by a general law, delegate to the local body the general power to adopt by-laws or ordinances on a particular subject, it may, by general law, limit that power by prescribing the provisions which the by-law shall contain and leaving to the local body merely the power to accept or reject the by-law. Then, whether or not it is constitutional to delegate, by a general local option law, the power to adopt or reject a prescribed charter or charter provision, it is clearly constitutional to delegate in this manner the power to adopt or reject a prescribed by-law or ordinance.

It is a well-established principle that the constitution will be interpreted with reference to the laws and customs prevailing at the time of its adoption, and the distinction between what is a delegation of power to adopt a charter or charter provisions and what is a delegation of power to adopt a by-law or ordinance must be determined largely

by ascertaining what had usually been the custom in this state up to and at the time this constitutional amendment was adopted. Undoubtedly, the line of this distinction is somewhat ill-defined. But, if there is a doubt as to the constitutionality of a law, that doubt must be resolved in favor of its constitutionality. Therefore, if, by reference to the practice heretofore prevailing, it is doubtful whether the delegation of power is one to adopt charter provisions, or one to adopt mere by-laws or ordinances, that doubt must be resolved in favor of holding the law delegating such power constitutional.

There is another distinction to be considered, and that is the distinction between what the legislature can practically do and what it cannot. The main reason for the existence of ordinances and by-laws has always been that they regulated local subjects and matters of detail which the legislature could not directly or properly regulate by the passage of permanent laws, either general or special. This old principle must be applied to new instances which will continually arise under the constitutional amendments prohibiting special legislation. The regulation of such matters may always be delegated in general terms to local bodies, and it necessarily follows that more limited powers may be thus delegated by the passage of local option laws for the regulation of these matters. These are distinctions which have sometimes been overlooked in the decisions of those states having similar constitutional provisions. Let us notice some of these provisions and the decisions under them.

The constitution of New Jersey provides that "the legislature shall not pass private, local, or special laws" "regulating the internal affairs of towns [held to include cities] and counties." Amend. art. 4, § 7, par. 11. It is held by the courts of that state that those restrictions were not intended to secure uniformity in the operation of laws, and that local option laws, otherwise general in form, giving to municipalities the right to accept or reject the provisions of the law, are constitutional. Paul v. Gloucester Co., 50 N. J. Law, 585, 15 Atl. 272; Warner v. Hoagland, 51 N. J. Law, 62, 72, 16 Atl. 166, 171; In re Cleveland, 52 N. J. Law, 188, 19 Atl. 17.

The constitution of Pennsylvania provides that "the general assembly shall not pass any local or special law.   *   *   *   regulating the affairs of counties, cities, townships." Article 3, § 7. Under this provision, it is held unconstitutional to delegate to municipalities the

right to accept or reject such a local option law.    Appeal of City of Scranton School Dist., 113 Pa. St. 176, 6 Atl. 158; Frost v. Cherry, 122 Pa. St. 417, 15 Atl. 782.; Commonwealth v. Denworth, 145 Pa. St. 172, 22 Atl. 820.    Neither the constitution of Pennsylvania nor that of New Jersey expressly requires that the law shall have a uniform operation throughout the state, but the Pennsylvania court regards the prohibition of special legislation as equivalent to a requirement of uniformity, while the New Jersey court does not.

The constitution of Florida provided: "The legislature shall not pass special or local laws in any of the following enumerated cases,  *  *  * regulating county, township and municipal business; regulating the election of county, township and municipal officers."    Article 3, § 17. "In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state."    Article 3, § 18.    "The legislature shall establish a uniform system of county, township and municipal government."    Article 3, § 21.    Under these provisions, the supreme court of that state has held repeatedly that a general local option law for the organization of cities is not a law of uniform operation throughout the state, and therefore unconstitutional.    McConihe v. State, 17 Fla. 238;  State v. Stark, 18 Fla. 255; Ex parte Wells, 21 Fla. 280.

The constitutions of Iowa and Indiana each prohibit special legislation as to certain matters, and provide that all laws relating to these matters "shall be general and of uniform operation throughout the state."    Const. Iowa, art. 3, § 30; Const. Ind. art. 4, § 119.    In Maize v. State, 4 Ind. 342, it was held that, by reason of such constitutional provisions, a local option law which, by its terms, went into effect, and prohibited the sale of intoxicating liquor, in such townships as adopted it, is unconstitutional.    This decision was approved in Lafayette, M. & B. R. Co. v. Geiger, 34 Ind. 185, 226, 227.    The supreme court of Iowa held likewise, under their constitutional prohibitions, in State v. Gilbrick, 5 Iowa, 491.    In Dalby v. Wolf, 14 Iowa, 228, the court sustained a law authorizing the people of the several counties to decide, by a majority vote, whether to restrain hogs and sheep from running at large.    The court distinguish the case from that in 5 Iowa, on the ground that "they [the voters] only determine whether a certain thing shall be done under the law, and not whether the law

shall take effect," as was provided by the law held invalid in 5 Iowa. From what has been said, it will appear that there is but little in the distinction.

The position of the Indiana and Iowa courts, that a law which can only take effect in each municipality on being adopted by the same contravenes these constitutional provisions, is, in our opinion, undoubtedly correct as applied to a proper matter. But we are of the opinion that the prohibition or licensing of the sale of intoxicating liquors is not such a matter. These constitutional provisions do not require the legislature to do what is impracticable, what they have never been able to do,—to effectively regulate the liquor traffic without regard to locality or local sentiment. Experience has demonstrated that prohibition can only be enforced where there is a strong public sentiment behind it, and there is a great difference between the amount of this sentiment in different localities in the same state. Again, this sentiment changes from time to time in the same locality. Then the legislature have a right to say that the question of license or prohibition in each locality is not a matter for them to decide, or a matter to be settled by any statute fixing absolutely or permanently the status in this respect of the whole state or of the different localities.

In the case of Frost v. Cherry, supra, the court held a local option fence law, to take effect in each county when adopted by the voters of that county, unconstitutional, as special legislation. It seems to us that the same reason of impracticability applies to a fence law as to a license or prohibition law. It is often utterly impracticable for the legislature to enact an expedient unconditional fence law. Whether the farms should be fenced, and the stock be allowed to run at large, in any particular locality, depends wholly on very complex local conditions, which determine what is for the best interests of the majority of the people of the locality, and is a question which each locality should usually be allowed to settle for itself.

The distinction is between what is properly legislation and what is properly or necessarily a local by-law. That it is not a delegation of legislative power to grant to some designated body powers which the legislature cannot themselves practically or efficiently exercise is laid down in State v. St. Paul, M. & M. R. Co., 38 Minn. 246, 36 N. W. 870, 871; and in Anderson v. Manchester F. Ins. Co., 59 Minn. 182, 194, 195, 60 N. W. 1095, and 63 N. W. 241. This distinction between what

the legislature can do and what they cannot exists in the nature of things, and has not been eradicated by the constitutional provisions prohibiting special legislation and requiring legislation of uniform operation.   It seems to us that several of the courts above mentioned have been misled by ignoring this, and failing to consider that legislation containing a local option provision may in fact be merely a grant of power to each local body to adopt or reject a prescribed by-law, and that, by prescribing the contents of the by-law, the legislature have really granted less power to each local body than if they granted the power to pass any by-law the local body saw fit concerning the particular subject-matter.

Let us now proceed to apply these principles to the case at bar. Most of the powers provided for by said Laws 1895, c. 228, are distinctively charter powers; that is, they pertain to matters which are almost invariably regulated by city charters, and not by the by-laws passed under such charters.   Then, the legislature cannot do indirectly what they cannot do directly; and this act is not constitutional unless the diverse results which may be brought about by the adoption of the act by one city, and the rejection of it by another, can be brought about by direct, unconditional legislation.   There are two cities in the state having more than 100,000 inhabitants.   Can the legislature, by a direct act, provide that said chapter 228 shall apply to the one city, but not to the other?   The part of section 146 above quoted provides that, when the act is adopted by any city, "all acts and parts of acts in any charter or special law relating to said city shall be thereby, as to said city, repealed in so far as the same relate to the subject-matter of this act."   Will not the adoption of this act by one city, and not by the other, have the effect of a partial repeal of a special law by a special law?   Clearly, such a special law, partially repealing such a special law, is unconstitutional.

It will be readily seen by any one familiar with the charter law of the two cities in question that the adoption of chapter 228 by either city will, if the law is valid, repeal a part of each of several of the special acts which make up the charter of that city, leaving the other part of each special law to stand, and leaving all of the special laws of the other city on the same subject wholly unaffected.   The legislature may, by a general, unconditional law, expressly repeal all special laws so far as inconsistent with it, though this may have the ef-

fect of leaving the other part of one or more special laws in force and unrepealed. State v. Sullivan, 62 Minn. 283, 64 N. W. 813. A general law is also constitutional which does not, by implication or otherwise, repeal the special laws in conflict with it. State v. Egan, 64 Minn. 331, 67 N. W. 77. The reason of this is that, although the constitutional amendment requires the general law to be uniform in its operation, the amendment does not, as this court construes it, require this uniformity to be brought about immediately. Every step taken must be in the direction of a general law of uniform operation, but the legislature need not at once, or at any one time, take all the steps necessary to bring about this result.

Again, the amendment provides that "the legislature may repeal any existing special or local law, but shall not amend, extend or modify any of the same." This allows a special law to be totally repealed by a special law, and, as held in the Sullivan case, it allows the partial repeal or modification by a general law of all special laws so far as inconsistent with it. Such a general law is not special legislation at all. But, as before stated, this constitutional provision does not permit a special law to be partly repealed or modified by a special law. Then, the legislature cannot, by a direct, unconditional special law (either included in a general law or enacted alone), repeal the parts of the special laws pertaining to St. Paul, attempted to be repealed by the enactment of chapter 228, and the adoption of the same by the council of that city. As before stated, if the legislature cannot do this directly, by unconditional legislation, they cannot do it indirectly, by legislation containing such a local option provision.

Then, it is our conclusion that chapter 228, aforesaid, is unconstitutional and void; and therefore the claim of respondent, that he holds an official position under it, cannot be sustained.

Let a writ of ouster issue.