STATE v. CHARLES R. SCHRAPS.[1]

January 5, 1906.

Nos. 14,651—(220).

**Act Unconstitutional.**

Chapter 101, p. 107, Laws 1901, "An act limiting the number of licenses to be issued for the sale of malt or spirituous liquors in places bordering on the patrol limits in all cities of the state of Minnesota, now or hereafter having over fifty thousand inhabitants," is unconstitutional, being in violation of Const. art. 4, § 36 (Laws 1899, p. vi), in that it does not apply equally to all the cities of the class.

Appeal by defendant from a judgment of the municipal court of Minneapolis, Waite, J., whereby he was convicted of the offense of selling spirituous liquor without a license. Reversed.

[1] Reported in 106 N. W. 106.

*A. B. Jackson,* for appellant.

We contend (1) that the act of 1901 is "special and local" and not "general," because it attempts to legislate for a limited number of cities, in reality for but one, viz., such cities of fifty thousand as have also a "patrol limit," and we think such fictitious "classification" is arbitrary and not germane to the subject of legislation. It may be added that the term "patrol limit" is indefinite and uncertain. Local custom may give it a meaning in one community which it might not have in another, and as it has no general signification the classification based on this term, as a factor, cannot ensure uniformity of operation on all members of any known class.

(2) That because the act is special and local in its necessary operation and effect, it is prohibited by the several clauses of Const. (Minn.) art. 4, § 33.

(3) That even if the act could be construed as general and not special or local, under the approved canons of construction and of permissible classification—which does not seem possible—it must still be held inapplicable to the city of Minneapolis, because such application would over-ride, amend, revise and modify important provisions in the charter, which have never been repealed, and as to which no repeal by implication can be presumed.

In considering the decisions of our state it is, however, of prime necessity to bear in mind the historical sequence of the several constitutional amendments. Between the amendment of 1882 and that of November, 1892, the prohibition of "special or private laws" applied only to the eleven specified topics, and special legislation as to cities and other municipal corporations was expressly allowed. Section 34 of the 1882 amendment required the uniform operation "throughout the state," of all general laws on any of the eleven topics as to which "special or private" legislation was prohibited by section 33.

The amendment of 1892 extended the prohibtion of special legislation to the affairs of counties, cities, villages, townships, ward or school districts, expressly forbade the passage of "local or special laws" creating offices in such municipal divisions, prescribing the powers and duties of officers of the same, or fixing their compensa-

tion or mode of election or appointment; forbade the granting, amending, revising, extending or explaining of any corporate charters; and made the following significant change in the last clause of section 33, viz.: (1882 amendment) "But the legislature may repeal any existing special law relating to the foregoing subdivisions." (1892 amendment) "The legislature may repeal any existing 'special or local' law, but shall not amend, extend or modify any of the same." The application of section 34 requiring "uniformity of operation" became thus enlarged and extended to laws on all the new topics as to which "local or special" laws were now prohibited.

Next came the Home Rule Charter amendments of November 1896 and 1898, only important here because of the clause which permits the legislature "to provide general laws relating to affairs of cities, the application of which may be limited to cities of" either of four classes on a basis of arbitrary classification by population alone, (1) over fifty thousand, (2) from twenty thousand to fifty thousand, (3) from ten thousand to twenty thousand, (4) of ten thousand or less, with the important stipulation and condition that such general laws "shall apply equally to all cities of either class." We have thus had three distinct constitutional periods since November, 1882:

1. November, 1882, to November, 1892, during which "local," "private" or "special" laws could be passed regulating nearly all the affairs of cities, and of counties, except changing county seats, laying out or vacating roads, etc.

2. November, 1892, to November, 1896, during which local or special laws regulating the affairs of cities, counties, and villages, amending charters, etc., were prohibited, but general laws on these subjects "operating uniformly throughout the state", were permitted, and repeals, but not amendments or modifications, of existing special or local laws were permitted.

3. November, 1896, to the present time, during which the prohibition against passing any new local or special laws on any of these subjects, and against the amendment or modification of existing special or local laws has continued, but during which, general laws, based on one of the four prescribed classifications by population,

have been permitted, if such general laws "apply equally to all such cities of either class."

We append a list of thirty-three decisions in this state, in their chronological order, comprising all pertinent cases bearing on the constitutional questions raised on this appeal. Eighteen of these turn mainly on the question of permissible or arbitrary classification, and of these, nine hold the classification to be arbitrary and the law special, viz.: Nos. 1, 4, 14, 18, 19, 20, 25, 28 and 29; and nine sustain the classification as reasonable and germane, making the law general, viz.: Nos. 3, 12, 13, 21, 24, 30, 31 and 33.

1. Nichols v. Walter, 37 Minn. 264 (1887); 2. State v. Spaude, 37 Minn. 322 (1887); 3. McCormick v. Village of West Duluth, 47 Minn. 272 (1891); 4. State v. Sheriff of Ramsey County, 48 Minn. 236 (1892); 5. State v. Cooley, 56 Minn. 540, 548 (1893) (1894); 6. Alexander v. City of Duluth, 57 Minn. 47 (1894); 7. State v. District Court of St. Louis County, 61 Minn. 542 (1895); 8. State v. Sullivan, 62 Minn. 283 (1895); 9. State v. Eagan, 64 Minn. 331 (1896); 10. State v. Copeland, 66 Minn. 315 (1896).; 11. Bowe v. City of St. Paul, 70 Minn. 341 (1897); 12. State v. Sullivan, 72 Minn. 126 (1898); 13. Spencer v. Griffith, 74 Minn. 55 (1898); 14. State v. Ritt, 76 Minn. 531 (1899); 15. Alexander v. City of Duluth, 77 Minn. 445 (1899); 16. State v. Johnson, 77 Minn. 453 (1899); 17. State v. Minor, 79 Minn. 201 (1900); 18. Murray v. Board of Co. Commrs. of Ramsey County, 81 Minn. 359 (1900); 19. Duluth Banking Co. v. Koon, 81 Minn. 486 (1900); 20. State v. Walker, 83 Minn. 295 (1901); 21. State v. Westfall, 85 Minn. 437 (1902); 22. State v. Johnson, 86 Minn. 121 (1902); 23. State v. Ames, 87 Minn. 23 (1902); 24. State v. Stoffels, 89 Minn. 205 (1903); 25. Hetland v. Board of Co. Commrs. of Norman County, 89 Minn. 492 (1903); 26. Kaiser v. Campbell, 90 Minn. 375 (1903); 27. Le Tourneau v. Hugo, 90 Minn. 420 (1903); 28. State v. Justus, 90 Minn. 474 (1903); 29. Thomas v. City of St. Cloud, 90 Minn. 477 (1903); 30. State v. Ames, 91 Minn. 365 (1904); 31. Stees v. Bergmeier, 91 Minn. 513 (1904); 32. State v. Gunn, 92 Minn. 436 (1904); 33. State v. Rogers, 93 Minn. 55 (1904).

*Frank Healy,* City Attorney, *A. C. Finney,* Assistant City Attorney, and *John H. Steele,* for respondent.

Appellant has no constitutional right to urge the unconstitutionality of this act. Crowley v. Christensen, 137 U. S. 86, 91. No citizen has any individual or property rights in relation to the sale of intoxicating liquors by retail. It is a matter entirely within the police power of the state. And the state may prohibit it entirely, limit it, and control it as it sees fit. Cantini v. Tillman, 54 Fed. 969; Crowley v. Christensen, supra.

LEWIS, J.

Appellant was charged with unlawfully selling spirituous liquors in the city of Minneapolis without first having obtained a license so to do. At the trial appellant justified the sale by claiming to be duly licensed by the city authorities, and offered in evidence a license authorizing him to sell and dispose of intoxicating liquors at his place of business, Nos. 32 and 34 Sixth Street South. The license was objected to by the state upon the ground that it was void under chapter 101, p. 107, Laws 1901. The objection was sustained, appellant convicted, and the constitutionality of that act is the question for consideration upon this appeal.

> An act limiting the number of licenses to be issued for the sale of malt or spirituous liquors in places bordering on the patrol limits in all cities of the state of Minnesota, now or hereafter having over fifty thousand inhabitants.
>
> Section 1. That in the cities of this state, now or hereafter having over fifty thousand inhabitants it shall be unlawful to issue licenses for the sale of malt or spirituous liquors for more than five places on one side of any block within the patrol limit of said city which fronts on said patrol limit, and all licenses issued in excess of said number shall be null and void.

In the case of Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623, followed in State v. Ames, 87 Minn. 23, 91 N. W. 18, and Le Tourneau v. Hugo, 90 Minn. 420, 97 N. W. 115, it was held that

the purpose of the amendment (section 36, art. 4, Const. [Laws 1899, p. vi]) was to enable the legislature to make population a basis of classification, although there might not be any natural relation between the subject-matter of the proposed law and the number of people in the classified cities. In the Le Tourneau case it was further stated that the amendment permitted the classification of cities for the purpose of legislation on the basis of population alone, and if the subject-matter of a statute concerns the affairs of cities of the class therein designated the classification by population alone was authorized by the amendment. While no special mention was made in these cases of the following provision in the amendment: "Which shall apply equally to all such cities of either class"— presumably the court was not unmindful of its effect, and there is nothing in those decisions inconsistent with it. By the adoption of that provision it is manifest that it was the intention of the people to preserve, with respect to cities as classified, the same feature of uniformity of application to all cities of a class as was guarantied by section 34 with respect to other legislation permitted under section 33. In other words, the amendment requires that all laws enacted by its authority must be general, and not special.

In the Le Tourneau case, owing to the peculiar wording of the act there under consideration, it was held that the reference to cities having a navigable canal should be treated as surplusage and in no sense an element of the classification, and the law was disposed of simply as though it was a provision with reference to certain cities within a specified class of population. In Thomas v. City of St. Cloud, 90 Minn. 477, 97 N. W. 125, we had under consideration an act which authorized the issue of bonds for the repurchase of water works by cities of ten thousand or less, and it was held unconstitutional for the reason that it adopted an arbitrary basis of classification; but no reference was made in that case to the clause in the amendment above referred to. In State v. Rogers, 93 Minn. 55, 100 N. W. 659, it was held, by a divided court, that chapter 83, p. 107, Laws 1903, authorizing cities having a population of fifty thousand or upwards to issue bonds for the construction of an armory, was constitutional.

Realizing that it is exceedingly difficult to frame a law which will be equally applicable to all cities of each class, the court has been most liberal in construing the various acts before it. It is apparent, however, that there is no end to the ingenuity of parties, interested in special measures applicable only to a specific locality, in framing laws apparently general in form, although special in fact. In our judgment, the act now under consideration is subject to this criticism. We cannot eliminate all reference to "patrol limits," and treat the classification as simply and wholly one upon the basis of population. The act is so worded that it is impossible to reject all reference to cities having "patrol limits" as surplusage and have any substance left. The plain intention is to legislate, not only for cities having fifty thousand population, but also for cities in that class having "patrol limits." It is assumed in the act that the term "patrol limits" has a well-defined meaning, generally understood— some condition in the several cities of the class concerning which legislation might properly be based and have equal application. The term "patrol limits" does not appear in the Minneapolis charter, but it is there provided that no intoxicating liquors shall be sold within certain limits.

It was assumed during the argument, and by the trial court, that in Minneapolis "patrol limits" meant that territory within which saloons are licensed, and which for that reason requires special patrol by the police. Not being defined by any law, its meaning depends upon usage, and so far as we are informed the meaning above suggested is limited to the city of Minneapolis. In the city of St. Paul the charter confers upon the city council authority to establish "patrol limits" within the city, and to prevent, suppress, and prohibit the sale of intoxicating liquors within such limits, and prescribes certain territory within which no liquors shall be sold, and also provides that no liquors shall be sold within two hundred feet of the boundary limit so established, while the charter of the city of Duluth is silent upon the subject of "patrol limits." It follows that at the time of the passage of this act "patrol limits" meant one thing in Minneapolis, as generally understood by its citizens, viz., that district within which liquors were sold and which required

special alertness on behalf of the police, whereas in St. Paul it meant directly the opposite and referred to that district within which no licenses were permitted, and as to Duluth it had, and could have, no application whatever.

No doubt, except as limited by the charters, the city councils of each member of the class may prescribe certain territory within which liquor may be sold and beyond which it may not. But each council may act according to its view of the necessities of the situation. In one city the license district may be very restricted, while in another of wide range. There is no general principle according to which the several councils are required to act. "Patrol limits," whatever it is, may mean one thing in one city and another thing in another city. All of this points unmistakably to the conclusion that this law was aimed to meet a special contingency, and was not expected to have general application to all the members of the class—cities of fifty thousand population.

It will not be necessary at this time to consider the other objections raised to the constitutionality of the act, viz., upon the ground that, in effect, it amends, modifies, or extends the special laws of the city of Minneapolis upon the subject of the licensing and sale of intoxicating liquors.

Judgment reversed.