WHITNEY WALL v. COUNTY OF ST. LOUIS and Others.[1]

August 28, 1908.

Nos. 15,788—(244).

**Classification of Counties.**
The financial condition of counties as shown by the relation between bonded indebtedness and the assessed valuation of property, is a proper basis for classification for the purpose of legislation with reference to the increase of indebtedness by the issue of bonds without a popular vote.

**Act Constitutional.**
Chapter 130, Laws 1907, is constitutional.

Action in the district court for St. Louis county to enjoin that county and certain of its officers from issuing and disposing of bonds to the amount of $600,000 for the construction of a court house.   From an order, Cant, J., sustaining defendants' demurrer to the complaint, plaintiff appealed.   Affirmed.

*M. Douglas,* for appellant.

*John H. Norton,* County Attorney, and *William J. Stevenson,* First Assistant County Attorney, for respondents.

ELLIOTT, J.

This is an appeal from an order sustaining a general demurrer to the complaint in an action to enjoin the county of St. Louis and its officials from issuing bonds under the authority of chapter 130, p. 43, Laws 1907, for the construction of the county courthouse.

[1] Reported in 117 N. W. 611.

The question presented is the constitutionality of the statute; the appellant contending that it is special legislation, and the respondent that it is a general law based upon a proper classification of counties.

The facts which the respondent claims authorize the issue of the bonds are very fully stated in the complaint. It appears that the present court house and grounds are inadequate and insufficient to accommodate the public business, and that the county has purchased a site for a new building and expended therefor the sum of $446,328.30. The plans for the new building have been drawn and accepted, and under contracts which have been let for its construction the county has incurred obligations to the amount of $900,000. Not having sufficient funds available to meet these obligations, the county commissioners at a meeting held on May 22, 1908, passed a resolution authorizing and directing the borrowing of $600,000 and the issue of the obligations of the county therefor. The county auditor was proceeding to sell the bonds in the manner provided by the act when this action was brought by a taxpayer.

If chapter 130, Laws 1907, is valid, the trial court properly sustained the demurrer. The county commissioners are charged by law with the duty of providing a suitable courthouse and jail, and are authorized under certain conditions to borrow money for that purpose. R. L. 1905, §§ 412, 434, 784. It is provided that counties shall not issue bonds for such purposes without the approval first obtained of a majority of the voters of the county. R. L. 1905, § 784. But the legislature may remove this restriction, and authorize the proper county authorities to borrow money to pay for the construction and equipment of public buildings, and issue bonds or other evidences of indebtedness therefor, without submitting the question to a vote of the people. 11 Cyc. 556, note 40; Jewell v. Weed, 18 Minn. 247 (272); Hetland v. Board of County Commrs. of Norman County, 89 Minn. 492, 494, 95 N. W. 305; Dallas County v. McKenzie, 110 U. S. 686, 4 Sup. Ct. 184, 28 L. Ed. 285. The people then act through their duly-elected representatives, instead of directly by means of a referendum.

The only restriction which exists upon the power of the legislature in this respect is found in the constitutional requirement that the legislature shall act through general, instead of special, laws. In this in

stance the legislative authority for the issuance of the bonds is found in chapter 130, Laws 1907, which provides: "That the board of county commissioners of any county in this state having property therein of an assessed valuation of not less than [one hundred million dollars] and having a bonded indebtedness of not more than [seven hundred thousand dollars] is hereby authorized and empowered to borrow moneys sufficient in their judgment to complete, erect and furnish a court house, jail and other county buildings previously duly authorized, such sums of money not exceeding [six hundred thousand dollars] as may be sufficient in their judgment, in addition to the moneys available for that purpose to so complete, erect and furnish such building or buildings or any smaller sum, and for such purpose to issue interest-bearing certificates of indebtedness of said county pursuant to the provisions of this act." Ever since the passage of this statute the assessed valuation of the taxable property in St. Louis county has been greater than one hundred million dollars and the total bonded indebtedness of the county less than seven hundred thousand dollars.

The constitutional provision which forbids special legislation should be so construed as to accomplish the purposes which the people had in mind when they adopted it. They never intended to render necessary and proper legislation impossible. They did intend to remove certain evils which had grown up under the system of special legislation. Either an excessively strict or liberal construction of the constitution and statutes would defeat such intention. One would accomplish nothing; the other would put the ship of state in stays. A fair and reasonable construction in the light of established principles has practically eliminated the evils, and yet left the legislature with reasonable and effective freedom of action. If it were necessary that every law should apply to every person and every thing within the jurisdiction of the state, legislation would practically stop. The propriety of classification of the subject-matter of legislation was understood when the constitutional provision was adopted and was recognized and extended so far as cities are concerned by a later provision of the constitution. The principles which govern and control such classification have been so frequently announced by this court as to render further statement thereof unnecessary. State v. Brown, 97

Minn. 402, 106 N. W. 477 (where the previous cases are reviewed) ; Hunter v. City of Tracy, 104 Minn. 378, 116 N. W. 922. ·

The classification adopted in this statute is based upon the financial condition of the county, as determined by the relation between its indebtedness and the assessed valuation of its property. The subject-matter of the legislation is the increase of such indebtedness and the issue of bonds by the county officials without the vote of the people upon the particular question. The reference in the statute to the previous ·authorization of the construction of the building is not an element in the classification. This appears with reasonable clearness from the context, and also from its entire omission from the title of the act, which makes the statute applicable "in counties in this state having property of an assessed valuation of not less than $100,000,000, and having a bonded indebtedness of not more than $700,000." The authority conferred by the statute is to borrow money and issue bonds to erect or complete buildings, the construction of which has been duly authorized by the proper authorities before the money is borrowed and the bonds issued. It determines the order of events, and prevents the county from borrowing money and issuing bonds for the construction of public buildings which have not been, and possibly may not be, properly authorized.

The question, then, is whether counties which now, or may hereafter, have within their limits property of large assessed valuation (one hundred million dollars or more) and also a small bonded indebtednes (seven hundred thousand dollars or less), have such distinguishing characteristics as to constitute the group a class requiring legislation with reference to the issuance of bonds, which is not reasonably required by the other counties of the state. Is there any fair and legitimate reason which justifies the legislature in forming a class out of counties so situated and authorizing them to issue bonds without popular vote? Is there any apparent reason why in counties with large resources and small bonded indebtedness the legislature should intrust the incurring of such indebtedness for a legitimate, designated, and authorized public purpose to the county officials, while requiring authorization by a vote of the people in counties not so fortunately situated? Reduced to still lower terms, has the financial condition of a county, its resources, and liabilities, any such reasonab

and natural connection with the question of the propriety of intrusting the matter of increasing its bonded indebtedness to its officials as to justify the legislature in making it the basis of classification? Is there anything in the situation and circumstances of such counties which suggests the necessity or propriety of such legislation for them alone? We think there is, and that the basis of classification is neither arbitrary nor elusive.

The creation of bonded indebtedness depends upon the will of the people who must ultimately pay the debt. Their consent may be given by popular vote, or through their duly elected representatives. One method, when properly authorized, is as legitimate as the other. By a popular vote the electors may authorize the incurring of any amount of indebtedness which does not exceed ten per cent. of the assessed valuation of the property within the county which is to be bound thereby. The entire matter is under the control of the legislature, subject to the limitations which the people acting in their primary political capacity have placed upon legislative action. The constitution contains no restrictions upon the substantive right of the legislature to authorize bonded indebtedness for the purposes enumerated in this statute. But it does determine the manner in which the legislature shall act when authorizing counties to issue bonds. It must act through general laws which are applicable to all the members of the class affected thereby. The classification must be made according to certain well-understood principles. There must be legitimate differences in situation and conditions which make it reasonable and desirable to group the various units into a class for the purpose of legislating for all the members of that group. The same unit may thus be found in different classes for the purposes of different kinds of legislation. The legislature must proceed and act in accordance with these principles of classification, but it has wide discretionary power in the matter, and all reasonable presumptions are in favor of the constitutionality of the statute.

In this instance the legislature, in the exercise of its admitted general power, authorized the county to issue bonds for a proper public purpose. It could have granted the authority by a general law applicable to every county in the state. But certain counties of the state have a large bonded debt and a relatively small assessed valuation.

They are also heavily indebted, and are possessed of but limited means for payment. Other counties have a large assessed valuation and a relatively small bonded indebtedness. The question is whether additional bonded indebtedness shall be created without the consent of the people expressed at a popular election. The propriety and policy of intrusting the matter to the local officials is a legislative question with which we are not concerned. But the further question arises whether there is any reason for classifying the counties according to their financial condition and intrusting the power to the county officials when the financial condition of the county is good, and denying it to them when the financial condition is not so good. The legislature might fairly so conclude. The difference in conditions created by the relation of debts to the means of payment reasonably suggests the propriety of granting the power in one case and denying it in the other.

As a proper basis for this classification existed, it was for the legislature to determine the exact line of demarcation between counties which should be included in, and excluded from, a particular class. The placing of the assessed valuation at a high figure shows an intention to include in one class only the larger and wealthier counties of the state which have not incurred indebtedness to such an extent as to make it undesirable to further increase it without special authority from the people. We may take judicial notice of the fact that but three counties in the state possess property with an assessed valuation of one hundred million dollars or more, but we have no way of knowing the bonded indebtedness of these counties. Possibly, as asserted by the appellant, the act at present applies to but one county, but that in itself does not affect its validity. Either of the other counties with the requisite assessed valuation will come within the class when its bonded indebtedness falls below seven hundred thousand dollars. Any county in the state within the limit of bonded debt will enter the class when the assessed valuation of the property within its borders reaches one hundred million dollars. The statute is therefore not subject to the objection that it is special legislation. See State v. Cooley, 56 Minn. 540, 548, 58 N. W. 150.

The appellant relies on Hetland v. Board of County Commrs. of Norman County, 89 Minn. 492, 95 N. W. 305. The act which was

there held invalid applied only to counties having a population of one hundred thousand or less which previous to the passage of the act had entered into a contract for the construction of a court house and expended thereon not less than $7,000. It was manifestly special, as it applied to such counties only as had before the passage of the act contracted for the construction of the court house and expended a certain specified amount of money therefor. The case in no way resembles the one at bar.

The order of the trial court sustaining the demurrer is therefore affirmed.

BROWN, J. (dissenting).

The result in this case is sustained by the decision in State v. Cooley, 56 Minn. 540, 548, 58 N. W. 150 (the Minneapolis Courthouse case), but not in my opinion by our later decisions. State v. Schraps, 97 Minn. 62, 106 N. W. 106; Thomas v. City of St. Cloud, 90 Minn. 477, 97 N. W. 125; Hetland v. Board of County Commrs. of Norman County, 89 Minn. 492, 95 N. W. 305; Murray v. Board of County Commrs. of Ramsey County, 81 Minn. 359, 84 N. W. 103, 51 L. R. A. 828, 83 Am. St. 379. The statute here involved is unlike those before the court in Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623, and Kaiser v. Campbell, 90 Minn. 375, 96 N. W. 916, where authority to issue bonds to fund floating indebtedness was granted to certain municipalities of the state. Here the authority is to create additional indebtedness for the purpose, as in the Hetland case, of completing a courthouse already under construction. The decision opens up a new route by which to avoid the prohibition against special legislation, wisely or unwisely, incorporated in our constitution.