## HORACE LOWRY v. HUGH R. SCOTT and Others.[1]

February 4, 1910.

Nos. 16,466—(185).

**Act Unconstitutional.**

Held, following Hjelm v. Patterson, 105 Minn. 256, that chapter 405, Laws 1909, authorizing the issuance of bonds in counties containing a population of 275,000' or more for the purpose of improving public highways therein, is unconstitutional and void. The classification adopted by the act is arbitrary, and has no proper relation to the subject-matter of the statute.

Action in the district court for Hennepin county against the county auditor, county treasurer, and county commissioners of that county, and the First National Bank of Minneapolis to restrain the auditor from issuing and delivering certain bonds to the defendant bank; to restrain the county treasurer from accepting the proceeds and from expending the same; to restrain the defendant bank from accepting and paying for the bonds; and to declare Laws 1909, c. 405, unconstitutional and void. Defendant county officials demurred

[1]Reported in 124 N. W. 635.

to the complaint. From an order, Dickinson, J., sustaining the demurrer, plaintiff appealed. Reversed.

*G. A. Will,* for appellant.

*Al. J. Smith,* County Attorney, and *Elmer W. Gray,* Assistant County Attorney, for respondents.

It being possible for all the counties of the state to bring themselves within the provisions of the act, it is clear upon authority that its constitutionality cannot be successfully impeached on the ground that it is class legislation. Neither is the classification provided by the statute unreasonable. The classification is based upon some natural reason, a reason suggested by necessity, and by a difference in the situation and circumstances of the counties placed in the different classes suggesting the necessity of different legislation with respect to them. There is a difference in the situation, requirements, resources and necessities of counties thinly populated, and counties thickly settled, on the subject-matter of constructing and maintaining up-to-date, modern, permanent roads and highways, of material the best, and built by skilled workmen under the direction of experienced road engineers. In counties thinly populated the subject of good roads does not seriously concern the settler. A fairly good road found in many counties will have been made and kept by a logging company. Roads are built by needy homesteaders, hired by the day. These men work generally under the direction of a member of the town or county board. The work is done at irregular intervals. When there is any money for road work the word is passed along. With a plow, the settlers on the line of the road stir up the soil as deeply as possible, after cutting down the trees and pulling out the stumps. The cleared surface is then smoothed over a little and left to be worn hard by travel. Across wet places trunks of trees are laid down crosswise layer upon layer, regardless of uniformity of size. Dynamite and nature put the finishing touches on the highway. The settler roadbuilder did his best. The roads, little used, answer every purpose. The building, extending and maintaining of many miles of roads however in the thickly settled counties, as population has increased by leaps and bounds, is an entirely different proposition, and has be-

come a serious economic problem to the farmer and the people of the large and rapidly growing cities within their borders. The traffic is enormous and increasing. It is a matter of common observation that the coming of the automobile and motor vehicles, getting heavier all the time, with their fearful pounding and wear and tear upon the ordinary wagon road, calls for immediate and suitable road protection. The people in the populous counties demand good roads; they ask for the modern and permanent. They require that the roads be constructed of material the best, made by experienced road builders and in a manner approved by up-to-date road-making experts and highway engineers. The people are able, ready and willing to pay the cost. The legislature, recognizing this wide difference in the conditions existing in counties inhabited by a few people, and counties densely populated, wisely provided by this act the means to deal with the conditions now existing.

Population, if not limited to the present, may be a basis of classification of counties for the purposes of legislation, if germane to the purpose of the law. State v. Westfall, 85 Minn. 437. In that case Chief Justice Start cites the following cases: State v. Cooley, 56 Minn. 540; State v. District Court of St. Louis County, 61 Minn. 542; State v. Sullivan, 72 Minn. 126; State v. Stearns, 72 Minn. 200; State v. Ritt, 76 Minn. 531; Alexander v. City of Duluth, 77 Minn. 445; Murray v. Board of Commrs. of Ramsey County, 81 Minn. 359.

The claim that Hennepin county is the only county in the state now having the required population is not a valid objection to the constitutionality of the act, where provision is made for the future and the entry of other counties into the class is only a question of time. State v. Sullivan, supra; State v. District Court of St. Louis County, 61 Minn. 542, 548; State v. Spaude, 37 Minn. 322.

Legislative acts similar to the act under discussion have been held by this court not to be special legislation. Laws 1899, p. 80, c. 77, State v. Minor, 79 Minn. 201; Laws 1899, p. 358, c. 292, § 1, State v. District Court of Ramsey County, 84 Minn. 377; Laws 1901, p. 398, c. 252, State v. Stoffels, 89 Minn. 205; Laws 1899, p. 465, c. 351, § 10, Beck v. City of St. Paul, 87 Minn. 381; Laws

1901, p. 79, c. 75, Le Tourneau v. Hugo, 90 Minn. 420; Laws 1903; p. 107, c. 83, State v. Rogers, 93 Minn. 55; Laws 1903, p. 577, c. 333, State v. Rogers, 97 Minn. 322; Laws 1905, pp. 93, 94, cc. 76, 77, State v. Brown, 97 Minn. 402; Laws 1901, p. 31, c. 31, Stees v. Bergmeier, 91 Minn. 513.

BROWN, J.

Action to restrain the negotiation and delivery of certain bonds of Hennepin county, issued by its officers under the authority of chapter 405, p. 484, Laws 1909 (R. L. Supp. 1909, §§ 793–129 to 793–136). A general demurrer to the complaint was sustained by the court below, and plaintiff appealed.

The complaint alleges in substance that defendants, acting as officers and agents of Hennepin county, and under authority of the statute referred to, have issued road and bridge bonds of the county in the sum of $100,000, the proceeds thereof to be devoted to the improvement of the public highways therein; that the bonds have been sold to the defendant bank, and are about to be delivered to it by the county auditor. The relief demanded is that defendants be restrained and enjoined from delivering the bonds or receiving the proceeds thereof into the treasury of the county.

The sole question presented is the constitutionality of chapter 405, Laws 1909, under which the bonds were issued, and by authority of which defendants propose to sell and negotiate them. The act is entitled: "An act to authorize and empower the board of county commissioners of counties in this state now having or which may hereafter have a population of 275,000 or over to issue bonds and provide for the payment of such bonds, for the purpose of laying out, grading, building and improving roads and bridges in such county." The act is limited to particular counties, and population is the sole basis of the classification adopted. The several sections thereof authorize the board of county commissioners of any county coming within the class designated to issue the bonds of the county in the sum not exceeding $1,000,000 to aid in the repair and improvement of the public highways thereof. The question of the constitutionality of the act involves the inquiry whether it violates the provisions of the con-

stitution prohibiting special legislation, and that question is solved by the determination of the further question whether the classification adopted by the act removes it from the prohibition imposed.

Counsel for defendants, in support of the order of the trial court upholding the law, have filed an exhaustive brief upon the question reviewing many of the previous decisions of the court upon similar questions, to which we have devoted careful attention. Though some of the cases referred to proceed along exceedingly close lines, none of them control the case at bar. We are unable to point out any substantial difference between the statute under consideration and that held unconstitutional in Hjelm v. Patterson, 105 Minn. 256, 117 N. W. 610, 127 Am. St. 560.

The statute there before the court was an enactment in the interests of and for the purpose of securing better public highways, and provided for the "appointment of a county superintendent of highways, and a road inspector in towns, and defining their duties and powers, in all counties, this state, having less that 200,000 inhabitants." We held that the statute must fall "because the legislature adopted a classification which is purely arbitrary and has no proper relation to the subject-matter of the legislation." We followed the rule, early laid down, that counties may not be classified for purposes of general legislation, under the constitutional prohibition against special legislation, unless founded upon such a substantial distinction, having reference to the subject-matter of the statute, between the counties embraced therein and those excluded, as suggests the necessity or propriety of different legislation for the two classes. State v. Spaude, 37 Minn. 322, 34 N. W. 164. In respect to the matter of the improvement of public highways, we were then unable to point out any substantial reason why counties of less than 200,000 inhabitants should have the benefit of special legislation to the exclusion of those having a greater population. The highways of such counties are no different from the highways of any other county of the state, whether of greater or less population, and the benefits to accrue from their improvement and repair apply equally to every county in the state.

The reasoning of the court in that case is sound and applies to the case at bar. The improvement of public highways suggests neither

the necessity nor the propriety of different legislation for counties containing 275,000 population or over and those containing less than that number of people, and, having held that counties containing less than 200,000 inhabitants are not entitled to legislation of this kind, we must hold also, for the same reason, the want of differentiating conditions, that the legislature cannot constitutionally grant special privileges in this respect to those having a greater population.

The case of Wall v. County of St. Louis, 105 Minn. 403, 405, 117 N. W. 611, cited and relied upon by defendants, is not in point. In that case a new and somewhat novel classification was approved, which the court is not disposed to enlarge or extend. It has no application to a statute like that here under consideration.

It follows that chapter 405, Laws 1909, is unconstitutional and void, and that the demurrer to the complaint herein should have been overruled.

Order reversed.