# A. N. LODOEN v. CITY OF WARREN AND OTHERS.[1]

June 18, 1920.

No. 21,938.

**Home rule charter.**

1. The provision of chapter 65, Laws of 1919, which permits each city of the fourth class having a home rule charter to determine for itself whether that law shall become operative therein, violates sections 33, 34 and 36 of article 4 of the Constitution and is void.

**Delegation of power to adopt home rule charter.**

2. The powers conferred by that act are charter powers and the power to adopt them cannot be delegated by the legislature except in the manner provided by section 36, article 4, of the Constitution.

**Constitution — when invalid part of statute does not affect the valid part.**

3. Unless the invalid part of a law is so connected with its subject matter and purpose as to overcome the presumption that the legislature intended to keep within constitutional limits and to have the law become operative within such limits, the valid part of the law must be given effect.

**Classification of cities exemplified from operation of statute.**

4. Laws applying to cities of the fourth class may exclude from their operation cities of that class having home rule charters, as such further classification is permissible.

**Act inapplicable to defendant city.**

5. Chapter 65, Laws of 1919, does not apply to cities of the fourth class having home rule charters, and hence does not apply to the city of Warren.

Action in the district court for Marshall county to restrain defendants from proceeding with the performance of certain contracts to improve streets in defendant city; from levying an assessment in payment therefor upon the abutting property or upon the general property subject to taxation in the city; and from issuing certificates of indebtedness or other obligations of the city in payment for the improvement. Defendant's demurrer to the complaint on the ground that the same did not state facts sufficient to constitute a cause of action was sustained,

[1]Reported in 178 N. W. 741.

Grindeland, J.  From the order sustaining the demurrer, plaintiff appealed.  Reversed.

*A. N. Eckstrom,* for appellant.

*Charles Loring, C. A. Youngquist* and *Denegre, McDermott & Stearns,* for respondents.

*Douglas, Kennedy & Kennedy,* filed a brief as amici curiae.

TAYLOR, C.

It appears from the complaint that the city of Warren is a city of the fourth class having a home rule charter; that in proceedings instituted under and pursuant to chapter 65, p. 62, of the Laws of 1919, the city has let a contract to defendant Bitulithic Contracting, Limited, to pave certain streets in the city, and is about to issue certificates of indebtedness to provide funds to pay for the work, and intends to levy assessments against the benefited property to reimburse the city for the expense so incurred; that the question of issuing such certificates of indebtedness has never been submitted to or approved by the voters of the city, and that plaintiff is a resident and taxpayer of the city. and owns property abutting upon the streets proposed to be paved.  The city, its officers and the contractors are made parties defendant, and plaintiff asks that they be enjoined from performing the contract, and that the city and its officers be enjoined from issuing certificates of indebtedness of the city and from assessing the cost of the work against the benefited property.  The defendants demurred to the complaint, the demurrer was sustained, and plaintiff appealed.

The proceedings attacked by plaintiff were instituted under and rest upon chapter 65, p. 62, of the Laws of 1919, and the first question with which we are confronted is whether this statute applies to the city of Warren.  The first section provides:

"In any city of the fourth class or village of this state, howsoever organized, the council shall have power to improve any street or streets, or any alley or alleys by laying and maintaining pavements, gutters and curbs thereon of any material which it may deem suitable or by grading or graveling the same."

Succeeding sections prescribed the procedure to be followed, and

authorized the letting of contracts to do the work and the issuance of certificates of indebtedness to pay for it, and provide for levying assessments against the benefited property to reimburse the municipality for the expense incurred. Section 12a of the act reads:

"The provisions of this act shall not modify or repeal the provisions of the city charter of any city of the fourth class having a home rule charter, but any such city may, however, avail itself of the benefits of this act by ordinance duly passed by the governing body thereof."

The city of Warren is a city of the fourth class having a home rule charter, and duly enacted an ordinance determining and declaring that it availed itself of the benefits of this act, and claims authority thereunder to make the improvements in controversy.

Section 33 of article 4 of the Constitution, amongst other things, provides:

"The legislature shall pass no local or special law regulating the affairs of * * * any county, city, village, township, ward or school district."

Section 34 of the same article provides that all general laws regulating such affairs, "shall be uniform in their operation throughout the state."

In State v. Copeland, 66 Minn. 315, 69 N. W. 27, 34 L.R.A. 777, 61 Am. St. 410, an act establishing departments of public works and authorizing the making of public improvements in cities of over 100,000 inhabitants which act provided that it should "be enforced in any city whenever the common council of any such city embraced within its provisions shall adopt the same by a majority vote of all the members," was before the court, and, after an exhaustive consideration of the question, it was held that the act violated the constitutional provisions above quoted and was an unjustifiable delegation of legislative power and void.

In holding that the provision of the act which permitted one city to adopt it and another city of the same class to reject it violated the constitutional requirement that such laws "shall be uniform in their operation throughout the state," the court said:

"Under these constitutional provisions, is a local option law which

gives to each of a class of cities the right to accept or reject certain charter powers constitutional? Is such a general local option law one having a uniform operation throughout the state? How can a law which goes into effect in one city, and does not go into effect in another city of the same class, have a uniform operation throughout the state? It seems to us that the legislature cannot bring about diverse charter powers in different cities by enacting any such local option law which may result in giving different cities different charter powers, unless the same result can be accomplished by a direct, unconditional law. The mere possibility that all the cities of the class may adopt the law will not save it. It must appear at the time the law is passed that it will have a uniform operation throughout the state, that is, that it will take effect in all cities of the class, and that the class is a proper one. The uniform operation of the law cannot be left to any future contingency."

In Nichols v. Walter, 37 Minn. 264, 33 N. W. 800, it was held that chapter 272, p. 334, of the Laws of 1885 violated the uniformity rule, because it required a three-fifths vote to effect the removal of the county seat in certain counties and permitted such removal in other counties by a majority vote. In the course of the opinion the court observed:

"The proposition that a general law, to be operative, must be submitted to and adopted by the electors in each county in the state would be absurd, and equally absurd that a general law might be so submitted, and be operative in the counties where adopted, and inoperative where rejected."

See also Alexander v. City of Duluth, 57 Minn. 47, 58 N. W. 866; State v. Great Northern Ry. Co. 100 Minn. 445, 111 N. W. 289, 10 L.R.A.(N.S.) 250.

The laws involved in the Copeland and Nichols cases were enacted before section 36 of article 4 of the Constitution was adopted. But this section affects sections 33 and 34 only to the extent of permitting the legislature to classify cities on the basis of population as therein provided, and, where population is only one of several elements on which the classification is based, those sections still apply as to the additional elements. Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623;

State v. Ames, 87 Minn. 23, 91 N. W. 18; Le Tourneau v. Hugo, 90. Minn. 420, 97 N. W. 115; State v. Justus, 90 Minn. 474, 97 N. W. 124; State v. Schraps, 97 Minn. 62, 106 N. W. 106; State v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L.R.A.(N.S.) 327.

Defendants cite Adams v. City of Beloit, 105 Wis. 363, 81 N. W. 869, .47 L.R.A. 441; Eckerson v. City of Des Moines, 137 Iowa, 452, 115 N. W. 177; and Cole v. Dorr, 80 Kan. 251, 101 Pac. 1016, 22 L.R.A. (N.S.) 534. These cases support defendant's proposition that a general law may be passed to become operative only in those cities which see fit to adopt it, but we feel contrained to adhere to the rule announced in the Copeland case.

When the people amended the Constitution by inserting a provision that the legislature should pass no local or special law regulating the affairs of any city or village (section 33, article 4), and that all general laws regulating such affairs should be uniform in their operation throughout the state (section 34, article 4), and that laws relating to cities should apply equally to all cities of the designated class (section 36, article 4), we think they did not intend that these provisions should be evaded, and in effect nullified, by the simple expedient of enacting a law general in form, but which should become operative only in those municipalities that elected to adopt it. If this form of legislation were permissible, laws in fact local or special could be enacted to substantially the same extent as before. Any municipality desiring special legislation could procure it by securing the passage of an act, general in form, but operative only in those municipalities which elected to adopt it. Other municipalities would not be concerned for they need not adopt it, and could obtain in the same manner any different legislation which they might desire. A law general in form, but special in operation, violates the constitutional inhibition as much as if it were special in form. State v. Cooley, 56 Minn. 540, 58 N. W. 150.

It may be well to note that the powers conferred by chapter 65, p. 62, of the Laws of 1919, are charter powers as distinguished from the power to adopt local by-laws or ordinances, and that, although the legislature can delegate to municipalities the power to adopt local by-laws or ordinances, it cannot delegate to them the power to adopt what,

in their nature, are essentially charter powers, except by providing for the adoption of so-called home rule charters under and pursuant to section 36 of article 4 of the Constitution.

We are unable to escape the conclusion that the provision of the statute in question, which in effect authorizes every city of the fourth class having a home rule charter to determine for itself whether the statute shall or shall not become operative within such city, contravenes the constitutional provisions to which we have referred and is therefore void.

It is well settled, however, that where an unconstitutional element in a statute can be rejected and still leave a complete and workable law, the valid part must be given effect, unless the invalid part is so connected with the subject matter and purpose of the statute as to overcome the presumption that the legislature intended to keep within the limits prescribed by the Constitution and to have the law become operative within such limits. State v. Sullivan, 72 Minn. 126, 75 N. W. 8; State v. Standard Oil Co. 111 Minn. 85, 126 N. W. 527; State v. Ryder, 126 Minn. 95, 147 N. W. 953; Saari v. Gleason, 126 Minn. 378, 148 N. W. 293; Bofferding v. Mengelkoch, 129 Minn. 184, 152 N. W. 135.

After rejecting the optional provision of the act in question as invalid, a complete workable law remains which applies to all villages and to all cities of the fourth class not having home rule charters. It does not apply to any city of the fourth class having a home rule charter, for all such charters provide for the improvement of the streets of the city and prescribe the manner in which such improvements shall be made and be paid for, and the act does not modify or repeal any of these charter provisions.

Cities are divided into four classes solely on the basis of population, and all cities, having not more than ten thousand inhabitants, are cities of the fourth class, regardless of all other considerations. The fact that cities having not more than ten thousand inhabitants are cities of the fourth class, does not debar the legislature from making a further classification of such cities, if the differences in their situation or condition are sufficient to justify doing so. And it has already been determined that the legislature may except from the operation of a general law ap-

plying to cities of the fourth class, the cities of that class having a home rule charter, as the classification thus created is warranted by the differences existing between the two classes. Hunter v. City of Tracy, 104 Minn. 378, 116 N. W. 922; Marwin v. Board of Auditorium Commissioners, 140 Minn. 346, 168 N. W. 17.

As the provision excluding cities having a home rule charter from the operation of the law, is valid and must be given effect, it follows that the law does not apply to the city of Warren, and as the proceedings in controversy rest wholly on this law and are not authorized by, and do not comply with, the provisions of the charter of the city, they cannot be sustained. It is but fair to the learned trial court to say that the question here decided was not raised in that court.

Order reversed.