**Gerald CARTER et al., Plaintiffs,**

**v.**

**Hugh GALLAGHER et al., Defendants.**

**No. 4–70–Civ. 399.**

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 6, 1971.

Luther A. Granquist, Smith, Marino & Becker, Legal Aid Society, Inc., Minneapolis, Minn., for plaintiffs.

Keith Stidd, City Atty., Arvid Falk, Asst. City Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM DECISION

LARSON, District Judge.

The plaintiffs originally brought this action seeking injunctive and declaratory relief in regard to the durational residency requirement contained in the definition of veteran found in the definition subdivision of the Minnesota veterans preference statute. Minn.Stat. § 197.45(1). Plaintiffs brought the action as a class suit. They maintained that the State and local durational residency requirements were unconstitutional as violative of the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States.

Pursuant to 28 U.S.C. 2281, a Three Judge Court was convened to hear the case. After submission of briefs and oral argument, the Three Judge Court determined that the controversy was not yet ripe for equitable relief. The Three Judge Court was accordingly dissolved and the declaratory judgment action was returned to a single judge for disposition. It is in this posture that this Court addresses the controversy.

The statutory provision in question provides that a veteran is defined as any person honorably discharged from any branch of the Armed Services after December 7, 1941, who is a United States citizen "and has been a resident of the State of Minnesota and of the county, city, town, village, school district, or political subdivision thereof to which application is made for five years immediately preceding his application, or who enlisted from the State of Minnesota."

The effect of the provision is to create three classes of veterans. One class consists of all those veterans who entered the service from Minnesota. The other two classes are made up of those veterans who are honorably discharged or separated from the service, who actually are residents of Minnesota but who did not enlist in the Armed Services from Minnesota. One group consists of those who have lived in both Minnesota and the local subdivision in which they are applying for at least five years. The other group is made up of those resident veterans who have not lived for five years in Minnesota and/or the local subdivision in which they are applying for a job. This latter class, the representative class in the class action, is not entitled to claim veterans preference. The former two are.

Plaintiffs argue that the durational residency provision in the definition of veteran that creates this unequal treatment of otherwise equally qualified veterans imposes a penalty upon the exercise of the constitutionally protected right to interstate travel without serving any compelling State interest. Hence it must be declared unconstitutional.

This Court must deal with four basic issues:

1. First of all, the threshold question of severability must be considered. This Court must ascertain whether the portions of the statute attacked as unconstitutional can be carved out of the entirety of the statute without affecting its operation as a whole.

2. Secondly, there is a dispute over the applicable constitutional standard to be applied. This Court must determine whether plaintiffs must show that the contested provision was designed to discourage or has a deterrent effect upon the exercise of a fundamental right, or, as plaintiffs maintain, that they must merely show that the statute imposes a penalty upon the exercise of the fundamental right—in this case the right being the alleged right to interstate travel.

3. In the event that issue is favorably resolved for plaintiffs, there must then be an examination of whether the statute imposes a penalty upon such a fundamental right.

4. If it is determined that there is such a penalty, an examination must be made to determine whether it is justified by a compelling State interest.

## SEVERABILITY

■■ Unless it is clear that the provisions not under attack in this case would not have been enacted separately from those sought to be declared unconstitutional, this Court may delete the invalid portions if the valid portions remaining will be fully operative as a law. Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 234, 52 S.Ct. 559, 76 L.Ed. 1062 (1910); United States v. Jackson, 390 U.S. 570, 585, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). It is evident to this Court that applying such a standard to the instant case compels the conclusion that the portion of the statute under constitutional attack can be severed from the other portions of the Act.

The veterans preference law previously limited the preference to citizens and residents of the State. Mason's Minn. Stat. § 4368 (1927). The five year durational residency requirement was added by the legislature in 1937. Minn. Laws Ch. 121, § 1 (1937). The language "have been residents of the State of Minnesota five years immediately preceding their application, or enlisted

from the State of Minnesota" was the only language added to the statute at that time. The law clearly pre-existed the five year residency requirement. It would be absurd under such circumstances to assert that it would not have been enacted without the five year durational provision because it very clearly was.

Furthermore, there was enacted in 1937 a special severability clause, chapter 121 § 3 (1937), which provided:

"The amendatory matter constituting this Act shall be considered severable from the original act amended and if found invalid shall not render Section 4368 invalid."

Since the only amendment in 1937 was the five year durational residency requirement, it is rather self-evident to which portion of the Act the severability provision applied. Although a similar severability clause was not included in the 1943 amendments to the Act, it should be noted that two years previously the Legislature had enacted a general severability provision. Minn.Laws Ch. 492 § 20 (1941). (Minn.Stat. § 645.20). Its passage evidences an intent that all legislation subsequent to 1941 be governed by the separability provisions contained therein. That provision, which incorporated substantially the same standards as existed in prior Minnesota case law (See Lodoen v. City of Warren, 146 Minn. 181, at 186, 178 N.W. 741 (1920), and cases cited therein), reads as follows:

"645.20 *Construction of severable provisions*

Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature

would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

The thrust of the severability provision is a presumption that the invalid portions are severable. The presumption is overcome by a finding that "the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one." This is in essence the same test as the one set forth by the United States Supreme Court. (*Supra.*) As was previously pointed out, there is absolutely no reason to assume that the durational residency requirement added in 1937 is so essentially tied to the prior provisions that it cannot be severed. The preference provisions pre-existed the durational residency requirement added in 1937. Furthermore, the inclusion of a special severability clause with the 1937 amendment indicates legislative provision for continued efficacy of the Act without the durational residency requirement.

### Must Plaintiff Demonstrate Deterrent Intent Toward or Actual Effect on Fundamental Right, or is it Sufficient that the Residency Provision Merely Impose a Penalty on the Exercise of the Right?

There is sharp disagreement between plaintiffs and defendants on the constitutional test to be applied. The test ordinarily applied is whether or not the distinction made bears a rational relationship to the accomplishment of a permissible objective. See Turner v. Fouche, 396 U.S. 346, 362, 90 S.Ct. 532, 24 L.Ed. 567 (1970); McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). However where the right involved is a fundamental personal right, the rational relation-ship test is not the appropriate test to apply. The State must, under such circumstances, show that the distinction promotes a compelling State interest. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

The Court in *Shapiro* said:

"At the outset, we reject appellants' argument that a mere showing of a rational relationship between the waiting period and these four admittedly permissible state objectives will suffice to justify the classification. The waiting-period provision denies welfare benefits to otherwise eligible applicants solely because they have recently moved into the jurisdiction. But in moving from State to State or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a COMPELLING governmental interest, is unconstitutional." 394 U.S. at 634, 89 S.Ct. at 1331. (Emphasis in the original.)

*Accord*: Cole v. Housing Authority of City of Newport, 435 F.2d 807, 809 (1st Cir. 1970); King v. New Rochelle Municipal Housing Authority, 442 F.2d 646 (2d Cir. 1971).

Plaintiffs and defendants agree in principle to the above test. Disagreement arises over what effect there must be upon the fundamental right to require application of the compelling State interest burden.

Defendants argue that the statute being attacked must either be intended to deter the exercise of the fundamental right or must have an actual chilling or deterrent effect on such exercise. If one or the other is not present, defendants maintain that the rational relationship test applies.

Plaintiffs' position is that they need not show either deterrent intent or effect of the statute. The fact that the statute operates to penalize the exercise of a fundamental right is sufficient to subject it to the scrutiny of the compel-

ling State interest test. This Court feels that plaintiffs' position has better support in the law.

Defendants base their argument heavily upon Starns v. Malkerson, 326 F. Supp. 234 (D.Minn.1970), aff'd 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), and Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Those two cases are, however, inapposite to the present controversy. Dandridge v. Williams does not deal with infringement of a fundamental right. The *Dandridge* Court recognized this fact when it applied the rational relationship test. At 397 U.S. 484, 90 S. Ct. at 1161, it said:

> "[H]ere we deal with State regulation . . . not affecting freedoms granted by the Bill of Rights, and claimed to violate the Fourteenth Amendment *only* because the regulation results in some disparity in grants of welfare payments to the largest AFDC families.[16]" (Emphasis supplied.)

The word "only" emphasized in the above cited excerpt is of critical importance when the test of footnote 16 is examined. There the Court cited and distinguished Shapiro v. Thompson, and pointed out that in *Shapiro* "by contrast the Court found state interference with the *constitutionally protected freedom of interstate travel.*" 397 U.S. at 484, footnote 16, 90 S.Ct. at 1161, fn. 16. (Emphasis supplied.) The inference is clear that had a similar right been affected in the *Dandridge* case, a different standard would have been applied.

The *Starns* case, it is true, involved a similar factual situation. There two women, recent arrivals to Minnesota and admittedly residents (their husbands had recently established law practice in Minnesota, were denied resident tuition rates at the University of Minnesota. The refusal was based upon a Board of Regents tuition regulation which provided that before being a resident for tuition purposes an individual must be domiciled for one year in Minnesota with intent to remain beyond completion of his schooling. On these facts the *Starns* Court explicitly refused to apply the compelling State interest test but used instead the rational relationship standard. This Court's reading of *Starns* indicates that the *Starns* Court, although it spoke in terms of deterrent intent or actual deterrent effect, obviously felt that the fundamental right involved in *Shapiro* was the right to the basic necessities in life. The *Starns* Court said:

> " 'While we fully recognize the value of higher education, we cannot equate its attainment with food, clothing and shelter. *Shapiro* involved the immediate and pressing need for preservation of life and health of persons unable to live without public assistance, and their dependent children. Thus, the residence requirement in *Shapiro* could cause great suffering and even loss of life. The durational residence requirement for attendance at publicly financed institutions of higher learning do not involve similar risks. * * * .' [Citing Kirk v. Bd. of Regents of Univ. of California, 273 Cal.App.2d 430, 78 Cal. Rptr. 260 (1969)].

"For the above reasons, we conclude that this is not a case of an infringement of a fundamental right and thus the exacting standards of compelling state interest test have no application." 326 F.Supp. at 238.

Having reached the conclusion that no fundamental right was involved, the *Starns* Court could not properly consider the issues in the light of the compelling State interest test.

It can thus be seen that in neither of the cases relied upon by defendants to support their contention that there must be a deterrent intent or effect upon a fundamental right did the Court involved recognize the existence of such a fundamental right.

If an examination is made of those cases in which a recognized fundamental

right has been involved, there is no indication that there must be a readily apparent intent to discourage exercise of the right or that there must be any ascertainable negative effect on exercise in order to make the compelling State interest test applicable. As a matter of fact it has been made clear beyond doubt that the penalty does not have to rise to any ascertainable level of deterrence to require application of the compelling State interest test. The Court of Appeals for the First Circuit made an explicit pronouncement in this regard in Cole v. Housing Authority of City of Newport, *supra.*

> "Analysis also reveals that the impingement on the right to travel does not have to rise to a fixed level of deterrence. If a certain amount of travel must be deterred, courts would be faced with the empirical question whether deterrence was actually achieved. Yet in *Shapiro*, the Court cited no evidence of deterrence but rather assumed that it existed. Similarly, the Court has recently affirmed a decision of a three-judge district court invalidating a state law permitting the superintendent of a state mental hospital to return to their state of former residence persons admitted to the hospital who had not resided in the state for at least one year. Vaughan v. Bower, 313 F.Supp. 37 (D.Ariz.1970), aff'd, 400 U.S. 884, 91 S.Ct. 139, 27 L.Ed.2d 129 (1970). There was no empirical demonstration that this state law deterred anyone from travelling, and logically it would seem doubtful that such a law could have significant deterrent effect. We suspect that few, if any, persons consider the possibility that they will be committed to a mental hospital when they decide to travel interstate." 435 F.2d at 810.

Similarly, in King v. New Rochelle Municipal Housing authority, *supra,* the Second Circuit reaffirmed the holding of the *Cole* Court when it said:

> "The Authority counters that, because of the lengthy waiting lists involved, there is no deterrence to travel effected by the five-year residency requirement. Without passing on this contention, we do find that the residency requirement penalizes respondents by adding an additional period of as much as five years to the time they must wait for public housing and that this penalty is imposed solely because they have recently exercised their right to travel."

The *King* Court went on to apply the compelling State interest test. Here the Court obviously concluded that the existence or non-existence of deterrence was irrelevant to the penalty concept. The Supreme Court of the United States, although it has not dealt with the issue directly as it affects the right alleged in the instant case—the right to interstate travel—it has in the context of other rights. United States v. Jackson, 390 U.S. 570, 582–583, 88 S.Ct. 1209, 20 L. Ed.2d 138 (1968), (Fifth Amendment right not to plead guilty; Sixth Amendment right to a jury trial); Sherbert v. Verner, 374 U.S. 398, 403–404, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1962), (First Amendment right to exercise freedom of religion). It has, however, referred to the right to interstate travel by way of dictum in Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272. Justices Brennan, White and Marshall said in their opinion:

> "By definition, the imposition of a durational residence requirement operates to penalize those persons, and only those persons, who have exercised their constitutional right of interstate migration. Of course, governmental action that has the *incidental* effect of burdening the exercise of a constitutional right is not *ipso facto* unconstitutional. But in such a case, governmental action may withstand constitutional scrutiny only upon a clear showing that the burden imposed is necessary to protect a compelling and substantial governmental interest."

400 U.S. at 238, 91 S.Ct. at 321. (Emphasis supplied.)

In light of such compelling authority this Court must reject defendants' contentions that deterrent effect or intent must be shown by plaintiffs. It is sufficient that the statute merely operate as a penalty upon the exercise of the right.

Whether or not the Durational Residency Requirement Contained in Minnesota Statute § 197.45(1) Imposes a Penalty upon a Fundamental Right.

Defendants' reliance on Starns v. Malkerson leads them to conclude that the fundamental right involved in *Shapiro* was the right to the essentials of existence—namely the State welfare payments. This argument misreads *Shapiro*. It has been alluded to prior in this opinion and it will be explicitly stated now: The fundamental right dealt with in *Shapiro* was the right to interstate travel, not the right to the fundamental necessities of life. Regardless of what interpretations of *Shapiro* formerly obtained, the matter has apparently been settled by the Supreme Court speaking through Mr. Justice Blackmun in Graham v. Richardson, 403 U.S. 365, 91 S. Ct. 1848, 29 L.Ed.2d 534:

> "It is enough to say that the *classification involved in Shapiro was subjected to strict scrutiny* under the compelling state interest test, not because it was based on any suspect criterion such as race, nationality, or alienage, but *because it impinged upon the fundamental right of interstate movement*. As was said there, 'The waiting-period provision denies welfare benefits to otherwise eligible applicants solely because they have recently moved into the jurisdiction. But in moving from State to State or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional.'" (403 U.S. at 375,

91 S.Ct. at 1854, citing Shapiro v. Thompson, 394 U.S. at 634, 89 S.Ct. 1322, 22 L.Ed.2d 600.) (Emphasis supplied.)

Accord: Dandridge v. Williams, *supra*; Cole v. Housing Authority of Newport, *supra*; King v. New Rochelle Municipal Housing Authority, *supra*; cf. Keppel v. Donovan, 326 F.Supp. 15, 19–20 (D.C. Minn.1970).

█ There is no question that the fundamental right to interstate travel is involved in the instant case. It is no more open to question, in the opinion of this Court, that a statute which requires a person who has recently traveled interstate to wait five years to obtain employment preference granted immediately to an otherwise equally qualified person who did not so travel imposes a penalty operative solely upon the exercise of that right. Under such circumstances the defendants must demonstrate that there is some compelling State interest which justifies the distinction. Oregon v. Mitchell, 400 U.S. at 238, 91 S.Ct. 260.

Whether or Not a Compelling State Interest is Served by the Durational Residency Requirement

It should be made clear at this point precisely what portion of the Minnesota veterans preference provisions is under attack in the instant matter. There is no assault upon the legitimacy of the preference for veterans over non-veterans. Neither is any objection being raised to a provision which would exclude from operation of the statute nonresident veterans who did not enlist from Minnesota. What is being called into question is a provision which separates into two classes the resident veterans of Minnesota and denies the benefits of the preference provisions to that class whose members have exercised the right to travel interstate within five years of the date of their application for employment. The issue thus is whether this requirement of residence for five years promotes any compelling State interest.

Initially it would be useful to explore the professed purpose served by the vet-

erans preference law. In State ex rel. Kangas v. McDonald, 188 Minn. 157, 246 N.W. 900, the Minnesota Supreme Court said:

"It has been the laudable purpose of the Minnesota lawmakers, declared on numerous occasions, to give a well-earned preference in appointments in the public service to those who have honorably served the nation in its time of peril." 188 Minn. at 161, 246 N.W. at 901.

If it is true that the Act is designed to give preference to those who have served the nation, then there is no State purpose at all served by conditioning the preference upon enlistment from or five years residency in Minnesota. Certainly a man who enlists in New Jersey or is drafted from California serves no less honorably because he is not from Minnesota. To so condition his receipt of the preference operates contrary to the purpose set forth in *Kangas, supra.*

It is true that there may be a natural desire to limit State granted veterans preferences to those who have been residents longest or who enlisted from the State. There may even be a plausible reason, though this Court sees none, or desirable aspect to such a motive. However, the issue is not how sensible or laudable such an action is, but whether it is constitutionally permissible. Here, where it imposes a penalty upon the exercise of the right to travel interstate, absent some compelling State interest, it is not.

Defendants suggested in argument that there was an interest of the State in limiting the preference to those who have been Minnesotans for a substantial period of time and have contributed to the tax base. Such an argument ignores two factors. First of all, it might be subject to constitutional infirmity. The equal protection clause of the Fourteenth Amendment may well prohibit such an apportionment of State benefits or services on the basis of prior tax contributions. See Shapiro v. Thompson, 394 U.S. at 618–619, 89 S.Ct. 1322.

Secondly, when it is observed that the durational residency provision is coupled with an exclusion for those enlisting from Minnesota, it is difficult to see how such an interest, assuming it is constitutionally permissible, would be served. The exclusion operates to permit a person who has never been a Minnesota resident to enter Minnesota for purposes of enlisting in the Service and receive the benefits of veterans preference when he is discharged. This is the case even though he may have voted absentee in his prior State of residence while in the Service and become a resident of Minnesota for the first time immediately upon his discharge. The particularly egregious nature of this becomes apparent when one realizes that if this fellow had a twin brother who was drafted at the same time, this twin brother would not qualify for Minnesota preference. This is true if they had gone lockstep together in the Service and hence had served the nation identically during their terms of service. The only conceivable purpose promoted by such a provision under these circumstances is to encourage nonresidents to enlist from Minnesota and return to seek a State job after their discharge. This is clearly the opposite of the result avowedly sought to be achieved.

This brings us to the first of the two State interests set forth by defendants in their memorandum. They say at page one that:

"Such laws extend rewards and privileges to those who enlist or otherwise report for service from various states, thus assisting in meeting the quotas assigned to each state and its political subdivisions."

This Court is unable to see how a durational residency requirement helps Minnesota or any other State meet its selective service quota. It provides no greater impetus for a Minnesota resident to enlist. If he chose instead to await induction through the selective service system he would receive the benefits of veterans preference anyway. Op.Atty. Gen. 85–B Feb. 12, 1941. Even if it did

encourage enlistment, this Court cannot perceive what compelling State interest is served. Admittedly, it would result in fewer young men being drafted. However, this would not reduce the total depletion of Minnesota's manpower reserves. It would simply vary the ratio of enlistees to draftees.

In a similar vein, neither does the exception for those who enlist from Minnesota appear to further any such interest. If it is assumed that a nonresident from Wisconsin was actually aware of the enlistment exception and sought to take advantage of it by enlisting at a recruiting station in Minnesota, Wisconsin—not Minnesota—would receive credit on its draft quota. Thus, that provision appears to serve no Minnesota interest at all. It would operate to reduce Wisconsin's draft quota in the same manner as was discussed earlier in connection with the durational residency requirement and the Minnesota quota. However, this Court is of the opinion that service in the Armed Forces is primarily in the general interest of the nation. Whatever parochial interest a State might have in reducing the total number of involuntary inductions of its residents, it hardly warrants penalizing a fundamental constitutional right. This is especially true when, as in the instant case, it is problematical at best that such a State interest is promoted by the durational residency requirement.

The second justification alluded to by the defendants in their brief was that other States impose more restrictive durational residency requirements than Minnesota. Such an assertion hardly warrants an elaborate rebuttal. The fact that other States may also have provisions which are constitutionally suspect does not make Minnesota's provision any less violative of the Equal Protection Clause of the Fourteenth Amendment.

On the basis of the foregoing it is the opinion of this Court that the durational residency requirement contained in Minn.Stat. 197.45(1) is inconsistent with the equal protection of the law afforded by the Fourteenth Amendment to the Constitution of the United States. It must therefore be, and it is, declared unconstitutional.