Donald **BARNES**, Individually and on behalf of all other persons similarly situated, Plaintiff,

Albert Boyd, Individually and on behalf of all other persons similarly situated, Plaintiff-Intervenor,

v.

**BOARD OF TRUSTEES, MICHIGAN VETERANS TRUST FUND**, Governmental Body of the State of Michigan Created Pursuant to MSA 4.1064 et seq., Defendants.

No. G–166–71 C.A.

United States District Court,
W. D. Michigan, S. D.
Dec. 21, 1973.

William L. Coash, Battle Creek, Mich., for plaintiff.

Rod McGillis, Asst. Atty. Gen., Lansing, Mich., for defendants.

## OPINION AND ORDER

Before PHILLIPS, Chief Circuit Judge,[*] FOX, Chief District Judge, and ENGEL, District Judge.

FOX, J.

This suit is a challenge to the constitutionality of a durational residency requirement. This requirement is set forth in M.C.L.A. § 35.602, and it specifies that a person must be a resident of Michigan for five years to qualify for aid from the Michigan Veterans Trust Fund. That Fund is a state fund established by M.C.L.A. § 35.601. The plaintiffs ask that the Fund's durational residency requirement be declared unconsti-

---

[*] Chief Circuit Judge Phillips was designated on November 19, 1973 as successor to Circuit Judge Kent who died on May 28, 1973.

tutional and that an injunction be entered restraining the enforcement of this requirement.

This court's jurisdiction is based on 28 U.S.C.A. § 1343(3) and this suit is authorized by 42 U.S.C.A. § 1983. This three-judge court was convened pursuant to 28 U.S.C.A. § 2281 and § 2284.

Presently before the court are several motions. The plaintiffs have submitted a motion to strike one of the defendant's affidavits, a motion that this suit be declared a class action, and a motion for summary judgment. The defendant has submitted a motion for dismissal and a motion for summary judgment.

## DURATIONAL RESIDENCY

From the pleadings and affidavits it appears that Mr. Barnes served in the United States Air Force from 1958 to August 23, 1968, and that he received an honorable discharge from the Air Force on August 23, 1968. Mr. Barnes is married, and is the sole support of his wife and five children. At the time this suit was filed he had been unemployed for approximately one year and his family's sole source of income was the Aid to Dependent Children of the Unemployed program, as he had exhausted his unemployment insurance benefits. He alleges that the grant from this program was not sufficient to meet all his family's needs.

In particular, he was delinquent in his payments under the land contract covering his home. Therefore, in May 1971 he applied to the Michigan Veterans Trust Fund for aid. This application was denied for the sole reason that he had not been a Michigan resident for the required five years. Following this rejection of his application a new land contract was executed. This occurred on July 7, 1971, and this contract has never been in default. On July 12, 1971, Mr. Barnes filed this lawsuit and on July 19, 1971, he was recalled by his former employer.

From the pleadings and affidavits it appears that Mr. Boyd served in the United States Army from December 16, 1942 to October 23, 1943, and that he received an honorable discharge on October 23, 1943. He moved to Michigan in 1969 and he is a resident of Michigan. He further alleges that he lives in a rented home with his wife and ten children.

On June 13, 1972, he was served with a 30-day notice to quit. Subsequently, on July 24, 1972, Mr. Boyd and his wife signed a sales agreement covering this home. In order to meet the terms of this agreement, Mr. Boyd had to secure financing within 45 days. In order to secure such financing he alleges that it became necessary for him to obtain $500 for closing costs and a down payment.

Mr. Boyd alleges that he is unemployed and can neither read nor write. His sole income is an Aid to Dependent Children Incapacitated grant. Therefore, he alleges that it was necessary for him to obtain the necessary $500 from the Michigan Veterans Trust Fund. On August 17, 1972 he applied to the Fund for assistance; he was not granted a hearing as his application was turned down on August 18, 1972, solely because he had not been a Michigan resident for the required five years.

As stated previously, the defendant has moved to dismiss this case. In support of this motion, it is argued that the durational residency requirement has harmed neither Mr. Barnes nor Mr. Boyd, as the defendant claims that they would necessarily be denied aid even if their applications were heard on the merits.

The defendant bases this argument on its contention that other regulatory requirements prevent these men from obtaining aid. These requirements are argued to be:

(1) That the veteran has an emergency need for assistance;

(2) That no other source of assistance is available to the veteran; and

(3) That temporary assistance is available only until the veteran

can be assisted from another source.

▋ However, these requirements are not part of a binding regulation; rather, they are merely contained in the title to a regulation. See Rule 35.-621(1), 1954 *Michigan Administrative Code*. Further, in Michigan it is clear that the title to a statute does not create law. As the Michigan Supreme Court stated in People v. Smith, 246 Mich. 393, 224 N.W. 402 (1929):

> "The title to an act must express the object of a law, and the enactment itself, without resort to the title, must make the law." 224 N.W. at 404.

Further, it is a general rule that:

> "Construction of a regulation is necessarily an interpretation of the statute under which it is issued, particularly where the statute calls for regulations to be issued, and provisions and principles applicable to 'statutes' may properly be applied to regulations." 2 Am.Jur.2d, Administrative Law § 295, pg. 123 (1962).

Following this general rule of construction, it cannot be said that the title to Rule 35.621(1) has a binding effect and necessarily precludes the granting of aid to the named plaintiffs. Further, even if the title were to be considered binding, it is not clear that these added requirements would bar the plaintiffs in this case.

It is clear that Rule 35.621(1), supra, does not bar these plaintiffs. This rule was promulgated under M.C.L.A. § 35.-604(c) which authorizes the Board of the Michigan Veterans Trust Fund to issue rules governing the granting of assistance "on the basis of need." This rule defines need as:

> "[A]ny emergency . . . requires immediate assistance . . . to prevent undue hardship . . . . The emergencies may involve hospitalization, . . ., food, fuel, clothing, shelter, necessary transportation, or other unforeseen emergencies that require prompt attention." Rule 35.-621(1), supra.

▋ Clearly, it cannot definitely be said that this regulation bars these men's aid applications to the Michigan Veterans Trust Fund, as both of these men amply allege that they were faced with emergency situations when they applied for aid.

If the durational residency requirement had not acted as a *per se* bar to their applications, the applications of the named plaintiffs would have been considered by the local veterans' county committee. See M.C.L.A. § 35.606. These committees would then have made a highly discretionary decision as to whether the aid should be granted to these two veterans, a decision governed only by Rule 35.621(1), supra. It is clear that this decision would have been made, as the defendant has admitted that these plaintiffs meet all of the statutory requirements which must be met before aid can be granted (see M.C.L.A. § 35.602), except for the residency requirement.

▋ In order for this court to find that these committees would have denied the requested aid, this court would have to involve itself in a guessing game of adding and subtracting various factors in an attempt to determine what a local county committee would view as an "emergency." This court refuses to engage in such an endeavor. From the allegations and affidavits submitted in this case, it is clear that these men were not millionaire veterans spuriously applying for aid. Both of these men were unemployed, both of these men were supported solely by assistance programs, and both of these men were confronted with a problem concerning one of their family's most crucial needs—the need for housing. On these facts, it is clearly not certain that these men would not have been granted emergency assistance by the appropriate committee. In fact, it is not clear that aid would have been denied even if the regulations were in fact as the defendant argues, as it is also not clear whether or not these men would satisfy the three additional requirements posed by the defendant.

Therefore, this court finds that Mr. Barnes and Mr. Boyd were in fact harmed by the durational residency requirement, as that requirement prevented them from obtaining a hearing which might have resulted in a decision favorable to them.

Having determined that these plaintiffs were harmed in fact, this court must decide whether the suit presents a "case or controversy" and whether these plaintiffs have standing to raise a challenge to the durational residency requirement. It should be noted that only the first of these questions poses a problem of constitutional dimensions, as while case or controversy is a constitutional requirement, standing is not. However, the two have often been blended. As the Supreme Court stated in Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1952):

> The requirement of standing is often used to describe the constitutional limitation on the jurisdiction of this Court to "cases" and "controversies." See Coleman v. Miller, 307 U.S. 433, 464 [59 S.Ct. 972, 986, 83 L.Ed. 1385] (concurring opinion). Apart from the jurisdictional requirement, this Court has developed a complementary rule of self-restraint for its own governance (not always clearly distinguished from the constitutional limitation) which ordinarily precludes a person from challenging the constitutionality of state action by invoking the rights of others. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346–348 [56 S.Ct. 466, 482–483, 80 L.Ed. 688] (concurring opinion). The *common thread underlying both requirements is that a person cannot challenge the constitutionality of a statute unless he shows that he himself is injured by its operation.* 346 U.S. at 255, 73 S.Ct. at 1034. (Emphasis supplied.)

The constitutionally required case or controversy contains two elements:

> Embodied in the words "cases" and "controversies" are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Flast v. Cohen, 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1967).

Neither of these limitations is applicable in the instant case. This dispute is presented in an adversary context. Both Mr. Barnes and Mr. Boyd contend that they have the right to have their applications heard on the merits and that their adversary has unconstitutionally denied them this hearing. Further, this controversy is susceptible to judicial resolution by means of a declaratory judgment. Finally, this case does not involve considerations of power allocations. Political questions are not raised, nor are the parties asking for an advisory opinion as the plaintiffs have in fact been affected by the challenged requirement.

Therefore, since this case meets the case or controversy requirement, the determinative issue is whether these parties have standing. Standing, unlike case or controversy:

> focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Flast, supra, 392 U.S. at 99, 88 S.Ct. at 1952.

■■ Both of these plaintiffs have alleged a personal stake sufficient to assure an adequate presentation of the issues, as they both allege that they have been harmed in fact by the operation of the durational residency requirement. As stated previously, both of these applications appear to have been bona fide and it is not clear whether a committee would have denied or granted the aid. Therefore, it cannot be stated that these men were not in fact harmed by being denied a hearing on the merits of their applications. This is especially true because of the highly discretionary quality of the decision which would have been reached following such a hearing. When someone has been harmed in fact by the denial of an arguably protected right, he has a personal stake sufficient to assure that the issues will be adequately presented. See Association of Data Processing Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970). Therefore, this court concludes that this case presents a case or controversy and that these plaintiffs have standing to assert a challenge to this durational residency requirement. The defendant's motion to dismiss is denied.

■ The defendant has also moved that Mr. Barnes be dismissed from this suit. In support of this motion it is argued that as to him the suit has become moot because he is now employed and because his land contract has been renegotiated and is no longer in default. Even if Mr. Barnes is not now faced with an emergency, he should not be dismissed from this suit. Almost by definition, emergencies requiring immediate assistance are short term matters which will be resolved for better or worse before a three-judge court can be convened and the case decided. Therefore, this suit involves a problem "capable of repetition, yet evading review." Moore v. Ogilvie, 397 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). See also Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911).

Because of this, Mr. Barnes will not be dismissed from this suit.

## CLASS ACTION

Plaintiffs have moved that this action be declared a class action with the class consisting of all those honorably discharged veterans who may be eligible for these benefits but who have not or will not be considered because of the five year durational residency requirement. The plaintiffs argue that this is a proper class action because the proposed class meets all the requirements of Federal Rule of Civil Procedure 23(a) and also falls within the ambit of one of the subsections of 23(b) (specifically, Rule 23(b)(2)). See Eisen v. Carlisle and Jacquelin, 391 F.2d 555, 561 (2nd Cir. 1968).

Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In order for there to be a proper class action it is, of course, axiomatic that there must be a class. The defendant's responses to the plaintiffs' interrogatories clearly show that the above-defined class exists, as these answers reveal that during the fiscal year July 1, 1970 to June 30, 1971, six applications were denied because of the durational residency requirement. Further, during the fiscal year July 1, 1971 to June 30, 1972, fourteen applications were denied because of the durational residency requirement. Therefore, it is clear that the durational residency requirement has been enforced and that the defined class exists.

■ So, the issue becomes, are the requirements of Rule 23 satisfied? First, is the class so numerous that join-

der is impracticable? This court finds that this requirement is met. Although it might appear at first inspection that this class could easily be joined (due to relatively small number of rejections in fiscal years 1970 and 1971), a deeper analysis reveals that this may not be the case, as the figures mentioned above do not reflect how many people may have not even filed an application after they were informed of the existence of the residency requirement, nor can these people be easily identified and joined. Secondly, the practicability of joinder is not a question which is to be resolved by a mere inspection of numbers alone. The court should examine all of the circumstances of the case. See Demarco v. Edens, 390 F.2d 836 (2nd Cir. 1968).

In this case, the potential class members are not all located in one geographical area; rather, they are scattered throughout the State of Michigan. Further, they are destitute people who would find it very difficult to become parties to a lawsuit located away from their homes. Therefore, this court finds that joinder is impracticable.

Requirement 23(a)(2) is also met as the class shares a common question of law, the constitutionality of the durational residency requirement. Further, the plaintiff's claim of the requirement's unconstitutionality is typical of the claim of the class and this court further finds that the named plaintiffs adequately represent the class. Therefore, this court finds that requirements 23(a)(3) and 23(a)(4) are also met.

Finally, as stated previously, a proper class must also meet one of the requirements of Rule 23(b). Rule 23(b)(2) provides that:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declarato-

ry relief with respect to the class as a whole; or

It is clear that this proposed class action is within the ambit of Rule 23(b)(2), as the State has refused to grant aid to members of the proposed class on a ground common to the class. Further, injunctive and declaratory relief are appropriate with respect to the class as a whole.

 Therefore, as all of the requirements are satisfied, this court finds that this is a proper class action.

## PLAINTIFFS' MOTION TO STRIKE

After a careful consideration of the state law which governs the plaintiffs' claim that certain of the defendant's affidavits should be struck because they contain confidential information, this court holds that the plaintiffs' motion must be denied.

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

In support of their motion for summary judgment, the plaintiffs argue that under Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), this court must hold that this durational residency requirement places an unconstitutional penalty on the plaintiffs' exercise of their fundamental right to travel and that this requirement is not necessary to achieve a compelling state interest. In Shapiro, the United States Supreme Court invalidated a one year durational residency requirement. The Supreme Court reached this result after holding that a durational residency requirement which penalizes the fundamental right to travel may only be upheld if it is necessary to promote a compelling state interest. The Court stated:

At the outset, we reject appellants' argument that a mere showing of a rational relationship between the waiting period and these four admittedly permissible state objectives will suffice to justify the classification. See Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 [31 S.Ct. 337, 340,

55 L.Ed. 369] (1911); Flemming v. Nestor, 363 U.S. 603, 611 [80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435] (1960); McGowan v. Maryland, 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393] (1961). The waiting-period provision denies welfare benefits to otherwise eligible applicants solely because they have recently moved into the jurisdiction. *But in moving* from State to State or to the District of Columbia *appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional.* Cf. Skinner v. Oklahoma, 316 U.S. 535, 541 [62 S.Ct. 1110, 1113, 86 L.Ed. 1655] (1942); Korematsu v. United States, 323 U.S. 214, 216 [65 S.Ct. 193, 194, 89 L.Ed. 194] (1944); Bates v. Little Rock, 361 U.S. 516, 524 [80 S.Ct. 412, 417, 4 L.Ed.2d 480] (1960); Sherbert v. Verner, 374 U.S. 398, 406 [83 S.Ct. 1790, 1795, 10 L.Ed.2d 965] (1963). 394 U.S. at 634, 89 S.Ct. at 1331. (Emphasis supplied.)

Further, the Supreme Court stated that:

There is no dispute that the effect of the waiting-period requirement in each case is to create two classes of needy resident families indistinguishable from each other except that one is composed of residents who have resided a year or more, and the second of residents who have resided less than a year, in the jurisdiction. On the basis of this sole difference the first class is granted and the second class is denied welfare aid upon which may depend the ability of the families to obtain the very means to subsist— food, shelter, and other necessities of life. * * *

On reargument, appellees' central contention is that the statutory prohibition of benefits to residents of less than a year creates a classification which constitutes an invidious discrimination denying them equal protection of the laws. We agree. 394 U.S. at 627, 89 S.Ct. at 1327.

Like the requirement in Shapiro, this durational residency requirement divides veterans, who are presently residents of Michigan but who were not residents immediately prior to their entrance into service, into two classes. These two classes of veterans are indistinguishable except for the fact that one class has not resided in Michigan for five years or more, while the other class has. Solely on the basis of this distinction, the members of the first class are denied the opportunity to receive emergency aid. This aid could be crucial to meet an emergency which might involve the ability to obtain food, shelter or needed medical care. Therefore, under Shapiro, this denial of essential benefits based upon the exercise of the right to travel constitutes an invidious discrimination.

Also, under Shapiro, this durational residency requirement penalizes the right to travel. The right to travel is a fundamental right and, therefore, any classification which penalizes the exercise of that right may only be upheld if it is found to be necessary to promote a compelling state interest. See Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

This court finds that the classification involved in this case clearly penalizes the right to travel, as it mandates that an otherwise qualified person who has recently traveled must wait five years before he can obtain emergency aid which could be immediately obtained by one who has not recently moved into the state. As a three-judge District Court stated in Carter v. Gallagher, 337 F. Supp. 626 (D.Minn.1971):

There is no question that the fundamental right to interstate travel is involved in the instant case. It is no more open to question, in the opinion of this Court, that a statute which requires a person who has recently traveled interstate to wait five years to obtain employment preference granted

immediately to an otherwise equally qualified person who did not so travel imposes a penalty operative solely upon the exercise of that right. Under such circumstances the defendants must demonstrate that there is some compelling State interest which justifies the distinction. Oregon v. Mitchell, 400 U.S. at 238, 91 S.Ct. 260, 27 L.Ed.2d 272, 337 F.Supp. at 632.

Also, as the Court of Appeals for the Sixth Circuit recently stated in Green v. McKeon, 468 F.2d 883 (6th Cir. 1972):

"The durational residency requirement at issue classifies * * * on the basis of recent travel. *That classification alone requires that the requirement be strictly scrutinized because it operates to penalize the exercise of the basic constitutional right to travel.*" (Emphasis supplied.) At 884.

(For further analysis of the meaning of "penalize," see also King v. New Rochelle Municipal Housing Authority, 442 F.2d 646 (2nd Cir. 1971), cert. den. 404 U.S. 863, 92 S.Ct. 113, 30 L. Ed.2d 107 and Cole v. Housing Authority of City of Newport, 435 F.2d 807 (1st Cir. 1970).)

These cases all suggest that a person is penalized if the resident who has traveled is subjected to conditions less lenient than those to which the non-traveling resident is subjected. That is certainly the case here, as a resident who has recently traveled to this state, who wishes to apply to the Michigan Veterans Trust Fund for aid, must bear a burden which the non-traveling resident is not subjected to, in that he must live in this state for five years before his application will even be heard. Therefore, he is penalized because he has recently traveled.

However, even if the word "penalize" were interpreted more rigorously, it is clear that the durational residency requirement at issue in the instant case would still be held to penalize the exercise of the right to travel, as it can operate to bar a person's application for aid even though his former state might have heard a very similar application. This fact is revealed by the defendant's summary of state laws which clearly indicates that many other states have similar aid programs for their resident veterans. Therefore, the instant durational residency requirement might penalize someone by taking away an opportunity which existed before he chose to travel. In fact, Mr. Barnes has been subjected to such a loss, as his former state, Illinois, has a veteran aid program similar to Michigan. Surely, someone is penalized when he loses an opportunity merely because he has recently exercised his constitutional right to travel.

 Having found that this durational residency requirement penalizes the exercise of the fundamental right to travel, this court must determine whether the requirement is necessary to promote a compelling state interest. During this inquiry two key standards must be kept in mind. First, *the state has the burden* of showing that the durational residency requirement is necessary to promote a compelling state interest. As the Supreme Court stated in Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L.Ed.2d 274 (1972):

"[A] heavy burden of justification is on the State, and that the statute will be closely scrutinized in light of its asserted purposes." 405 U.S. at 343, 92 S.Ct. at 1003.

 Second, the State may not enforce the durational residency requirement if the same objective could be reached by less restrictive means. As the Supreme Court also stated in Dunn, supra:

It is not sufficient for the State to show that durational residence requirements further a very substantial state interest. In pursuing that important interest, the State cannot choose means that unnecessarily burden or restrict constitutionally protected activity. Statutes affecting constitutional rights must be drawn with "precision," NAACP v. Button,

371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963); United States v. Robel, 389 U.S. 258, 265, 88 S.Ct. 419, 424, 19 L.Ed.2d 508 (1967), and must be "tailored" to serve their legitimate objectives. Shapiro v. Thompson, supra, 394 U.S. at 631, 89 S.Ct., at 1329. And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose "less drastic means." Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). 405 U.S. at 343, 92 S.Ct. at 1003.

See also Green v. McKeon, supra.

■ In this case, the state asserts that this residency requirement is necessary to promote the compelling state interest of "liquidating Michigan's obligations, . . . ., to its returning service men, their widows or dependents." The assertion misses the point of Shapiro, which is that the durational residency requirement itself, not the beneficial objects of the statute, must serve a compelling state interest to be valid. We assume that valid humanitarian motives prompted the enactment of the law and that the state may have a compelling interest in providing assistance to its returning service men, their widows and dependents. The compelling state interest referred to in Shapiro is not that which justifies the statute generally, but that which justifies a classification which penalizes the exercise of the basic constitutional right to travel. So analyzed here, we find no such compelling state interest from the evidence before us, nor does the state suggest that a further evidentiary hearing on the issue would disclose one.

A five year residence is hardly necessary to protect against fraudulent claims upon the fund by those who might be tempted to enter the state solely to seek the benefits. Such a concern is solved by proper safeguards in establishing the fact of residence, not the duration of it.

Likewise, state interest in protecting the fiscal integrity of the fund is expressly rejected by the language of Shapiro:

We recognize that a State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. It could not, for example, reduce expenditure for education by barring indigent children from its schools. Similarly, in the cases before us, appellants must do more than show that denying welfare benefits to new residents saves money. The saving of welfare costs cannot justify an otherwise invidious classification. 394 U.S. at 633, 89 S.Ct. at 1330. See also Graham v. Richardson, 403 U.S. 365, 375, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), and Besaw v. Affleck, 333 F. Supp. 775 (D.R.I.1971).

In holding that this durational residency requirement is unconstitutional, this court rejects several other arguments raised by the state. First, it rejects the argument that Shapiro should be confined to the welfare area. As the Sixth Circuit Court of Appeals recently pointed out in the Green case, supra, the fact that residents are classified on the basis of recent travel demands that the compelling interest test be applied. It is the classification on the basis of travel that is crucial, not whether or not welfare benefits are involved. This is shown by the wide variety of cases which have applied the principles set forth in Shapiro. See Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L. Ed.2d 274 (1972) (voting); King v. New Rochelle Municipal Housing Authority, 442 F.2d 646 (2nd Cir. 1971); cert. den. 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (public housing); Valenciano v. Bateman, 323 F.Supp. 600 (D. Ariz.1971) three-judge court (non-emergency medical care); Carter v. Gallagh-

er, 337 F.Supp. 626 (D.Minn.1971) (veteran employment preference statute); Corkey v. Edwards, 322 F.Supp. 1248 (W.D.N.C.1971), three-judge court (state abortion statute); Keenan v. Board of Law Examiners, 317 F.Supp. 1350 (E.D.N.C.1970), three-judge court (admission to the bar); Vaughan v. Bower, 313 F.Supp. 37 (D.Ariz.1970), aff'd memo 400 U.S. 884, 91 S.Ct. 139, 27 L.Ed.2d 129 (1970) (mental health care).

Further, the state argues that under Shapiro a statute should not be held unconstitutional unless it can be shown to deter travel. The Supreme Court laid that argument to rest in Dunn, supra, where that court stated:

> Tennessee attempts to distinguish *Shapiro* by urging that "the vice of the welfare statute in *Shapiro* . . . was its objective to deter interstate travel." Brief for Appellants 13. In Tennessee's view, the compelling-state-interest test is appropriate only where there is "some evidence to indicate a deterrence of or infringement on the right to travel . . . ." *Ibid.* Thus, Tennessee seeks to avoid the clear command of *Shapiro* by arguing that durational residence requirements for voting neither seek to nor actually do deter such travel. In essence, Tennessee argues that the right to travel is not abridged here in any constitutionally relevant sense.
>
> This view represents a fundamental misunderstanding of the law. It is irrelevant whether disenfranchisement or denial of welfare is the more potent deterrent to travel. *Shapiro* did not rest upon a finding that denial of welfare actually deterred travel. Nor have other "right to travel" cases in this Court always relied on the presence of actual deterrence. In *Shapiro* we explicitly stated that the compelling state interest test would be triggered by "any classification which serves to *penalize* the exercise of that right [to travel] . . . ." *Id.*, at 634 [89 S.Ct., at 1331] (emphasis added); see *id.*, at 638 n. 21 [89 S.Ct., at 1333]. While noting the frank legislative purpose to deter migration by the poor, and speculating that "[a]n indigent who desires to migrate . . . will doubtless hesitate if he knows that he must risk" the loss of benefits, *id.*, at 629 [89 S.Ct., at 1328] the majority found no need to dispute the "evidence that few welfare recipients have in fact been deterred [from moving] by residence requirements." *Id.*, at 650 [89 S.Ct., at 1340] (Warren, C. J., dissenting); see also *id.*, at 671–672, 89 S.Ct., at 1351 (Harlan, J., dissenting). Indeed, none of the litigants had themselves been deterred. 405 U.S. at 339–340, 92 S.Ct. at 1001.

■ Finally, the state argues that this statute is merely an attempt to deal with a part of the problem and that the state should not be penalized merely because it has not yet dealt with the whole problem. In conjunction with this, the state argues that because this statute goes beyond the effort made by most of the other states, this statute should be dealt with more leniently. Both of these arguments are rejected. First, the principle that all evils do not have to be dealt with at once does not give the state a license to attack in an unconstitutional manner those evils which it does choose to correct. Secondly, the fact that a state has chosen to provide more aid than most other states does not allow the state to grant that extra quantum of aid in an unconstitutional manner.

■ In summary, this court holds that the durational residency requirement at issue in this case penalizes the right to travel. Further, this durational residency requirement is held to be unconstitutional because it is not necessary to promote a compelling state interest.

## SEVERABILITY

The defendant argues that if this court finds that the durational residency requirement is unconstitutional, it must strike from the Act the entire sentence awarding benefits to those veterans who were not residents of Michigan prior to

entering the service. That sentence states:

"A veteran who did not have legal residence in Michigan immediately prior to entering the military service may become eligible to benefits administered under this act after having established a legal residence in Michigan for a period of not less than 5 years."

The effect of the suggested action would be to restrict benefits solely to those who entered the service from Michigan. The statute, however, is subject to the provision of Michigan law, contained in M.C.L.A. § 8.5, which states:

In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

■ Applying the foregoing provision to the language of the Act involved here, we are of the opinion that elimination only of the offending language does not render the remainder of the statutory provision inoperable, or either inconsistent with the manifest intent of the legislature.

*Accordingly,* that sentence shall now read:

"A veteran who did not have legal residence in Michigan immediately prior to entering the military service may become eligible to benefits administered under this act after having established a legal residence in Michigan."

In rendering the foregoing opinion, we emphasize that the factual findings made here with respect to the individual plaintiffs, and the class they represent are based upon the record before the court in this case. The factual findings from the record support our conclusion that plaintiffs here were denied benefits from the Michigan Veterans Trust Fund because of an unconstitutional residency requirement. This holding, however, is not to be construed as otherwise restricting the discretion of the administrators of the Veterans Trust Fund in handling the applications of plaintiffs here or any others who may apply for assistance.

Since this court finds the durational residency requirement contained in M. C.L.A. Sec. 35.602 is unconstitutional, and since the plaintiffs have requested injunctive relief, which ought to be granted,

It is ordered that an injunction issue permanently enjoining the defendants, their successors in office, agents, employees, and all persons in active concert and participation with them from refusing to grant to plaintiffs and all persons similarly situated assistance from the Michigan Veterans Trust Fund on the grounds that they have not established a legal residence in Michigan for a period of at least five years, or for any longer period purported to be authorized by said M.C.L.A. Sec. 35.602.

It is further ordered that the injunction to be issued shall require the defendants, their successors in office, agents, and employees to promptly ascertain so far as possible from the existing Michigan Veterans Trust Fund records the names and last known addresses of all persons who have not been considered for, or who have been and are presently denied benefits from the Michigan Veterans Trust Fund, because they have not established a legal residence in Michigan for a period of at least five years. If it reasonably appears that such persons may presently be eligible for benefits from the Michigan Veterans Trust Fund, the defendants, their successor in

office, agents and employees shall notify such persons of this fact, and shall describe the method of application.

It is further ordered, that the injunction to be issued shall require the injunction to be executed in good faith.

COSTS

The plaintiffs are to be awarded costs in this case, to be taxed on the defendants.

All further relief is denied.

It is so ordered.